The STATE of Ohio, Appellee,

v.

GRAYSON, Appellant.

[Cite as *State v. Grayson* (1991), 72 Ohio App.3d 283.]

Court of Appeals of Ohio,
Greene County.

No. 90–CA–0006.

Decided Jan. 24, 1991.

*William F. Schenck,* Prosecuting Attorney, for appellee.

*Dain N. DeVeny,* for appellant.

---

BROGAN, Judge.

Samuel Grayson III appeals from his conviction of drug abuse in the Greene County Common Pleas Court as a result of his no contest plea. He contends in his sole assignment that the trial court erred in overruling his motion to suppress evidence obtained when he was arrested by the police.

On February 20, 1989, at approximately 7:20 p.m., the Sugarcreek Police Department received a call that an aggravated robbery had occurred at the Sugarcreek Plaza. Sergeant Kelly Blair responded and interviewed the complainant and she described the suspect as a black male approximately six feet tall, 160–170 lbs., mustache, dark colored hat, black waist length jacket, who was armed with a knife and had fled on foot. This description was then broadcast to police crews in the general area and a little over an hour later Beavercreek Police notified him they had stopped a suspect.

Lieutenant Ed Crowder of the Beavercreek Police Department testified that he had overheard the broadcast from the Sugarcreek Police Department and shortly thereafter he encountered Robert Downey, who told him that a subject fitting the robbery suspect in Sugarcreek Township was at the M & S Garage in Beavercreek at that time.

Crowder said he then called Sergeant Blair who requested that Crowder get a photograph and any additional information from the suspect at the M & S Garage since the suspect's vehicle had been disabled. Crowder said he viewed the appellant and noted that he had on a blue-jean type of three-quarter length jacket, blue-jean pants, and tennis shoes. Crowder said he asked the Sergeant to do a pat-down protective search of the appellant and after he placed the appellant against the counter, Crowder asked appellant if he had any knives or guns on him. Crowder said the appellant said he had a pellet gun in his belt and Patrolman Rodney Curd retrieved that weapon from inside the appellant's pants belt underneath his coat.

Curd then located some kind of pouch inside appellant's coat pocket and the appellant grabbed it back from the officers. While backing away from Curd, Crowder said he then told the appellant that he suspected the pouch contained drugs and to hand it over to him because it probably wouldn't be a good search anyway. A few minutes later, the appellant handed him the pouch which contained three plastic bags containing crack cocaine.

On cross-examination, Crowder was asked if it wasn't apparent that the appellant was 5'10" and 250 lbs. Crowder said the appellant appeared to be six foot, 190–200 lbs. at the most.

The appellant testified he is 5'10" tall and weighs 260 lbs. He said he weighed 250 lbs. at the time of his arrest and he was not wearing a hat. He said he was returning to Central State when his car overheated on I–675 near the Indian Ripple road exit. He said his sister was with him and he walked to the K–Mart and called for a tow truck. At the garage he said he called a taxi and after he and his sister loaded their things, Lt. Crowder came up to him and told him to get out of the cab because he wanted to ask some questions.

He said Crowder told him about the robbery in Sugarcreek and that he fit the description. He said Crowder told him to stand against the wall while Crowder started taking pictures of him. He said Crowder asked him if he carried a knife and he said he said "No," but said, "I have a BB gun," and lifted his jacket up to show them the gun. He said Officer Curd removed the gun from appellant's waistband. He said Curd then reached into appellant's right coat pocket and recovered the little bag with cocaine inside of it.

■ In *Terry v. Ohio* (1968), 392 U.S. 1, 33, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889, 912–913, 44 O.O.2d 383, 399, the United States Supreme Court held that a stop involving a restraint upon a citizen's freedom to walk away is a "seizure" to be governed by the Fourth Amendment reasonableness standard. Reasonableness can only be determined by balancing the need to search or seize against the invasion which that action entailed. Justification for a particular seizure must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.*, 392 U.S. at 21, 88 S.Ct. at 1879–1880, 20 L.Ed.2d at 906, 44 O.O.2d at 393. The facts must be judged against an objective standard of whether the facts available to the officer at the moment of seizure or search would warrant a man of reasonable caution in belief that the action taken was appropriate.

■ We find that the appellant was stopped and detained when he was required to stand against the garage station counter to be photographed. We also find that an objectively reasonable officer could not have reasonably suspected the appellant of the reported robbery. The suspect was allegedly 6' and 160–170 lbs. The appellant was 5'10" and 250 lbs. The suspect wore a black jacket, the appellant a denim one; the suspect wore a hat, the appellant did not wear a hat. There was no evidence the suspect wore a mustache. There is nothing unusual in a young black male becoming immobilized on I–675. In short, the officer failed to demonstrate "reasonable suspicion" in

stopping and detaining the appellant. The evidence obtained as a result of the detention must be suppressed. The appellant's assignment is sustained.

The judgment of the trial court will be reversed.

*Judgment reversed.*

FAIN, P.J., and WILSON, J., concur.