OPINION
{¶ 1} On November 17, 2003, Teresa Mae Cook was indicted in the Montgomery County Court of Common Pleas for possession of crack cocaine, in violation of R.C. 2925.11(A). Cook moved to suppress the crack cocaine and her subsequent statements to the police. The trial court granted the motion, and the state appeals from that ruling.
 {¶ 2} Following an evidentiary hearing on the motion to suppress, during which Officers Jason Barnes and Doug George testified, the trial court found that the following facts were proven by a preponderance of the evidence, and we find they are supported by the record:
 {¶ 3} "On October 26, 2003 at approximately 1:25AM, Officer Jason Barnes, a two year veteran of the Dayton Police Department[,] was on routine patrol in the area of North Antioch in the City of Dayton, Montgomery County, Ohio. Officer Barnes was in a marked cruiser in the uniform of the day, patrolling his beat. Officer Barnes observed the Defendant walking eastbound on West Second Street. As she neared the street the officer asked Defendant `what was going on.' Defendant replied `nothing.' Officer Barnes' cruiser was impeding Defendant's ability to directly cross the street, [i.e., she had to walk around the cruiser, at least to some extent]. The officer then asked Defendant if she lived in the area. She stated that she was going home to her residence on Dennison, which was in the opposite direction from that which she was traveling. Defendant was approximately three feet from the officer's cruiser while the conversation took place. Officer Barnes remained in the cruiser. Defendant had her left hand closed in a fist. At no time was Defendant threatening in any manner nor could the officer see anything protruding from her fist. Officer Barnes directed Defendant to open her hand and show him what she had in it. Officer Barnes watched Defendant's hand and observed a piece of crack fall from her hand onto the street. Officer Barnes then exited the cruiser, asked Defendant to step back, and he retrieved the piece of crack from the street. Defendant was then placed into custody and arrested.
 {¶ 4} "Officer Doug George of the Dayton Police Department also responded to the scene of Defendant's arrest. Defendant was in Officer Barnes' cruiser when Officer George arrived. Officer George read to Defendant each of the five substantive Miranda
rights from a card supplied by the Montgomery County Prosecutor's Office. Defendant acknowledged that she understood those rights and stated that she was willing to waive those rights and speak with Officer George. Defendant then made certain inculpatory statements to Officer George."
 {¶ 5} The state asserts one assignment of error on appeal.
 {¶ 6} "The trial court erred in granting defendant's motion to suppress because officer barnes' contact with defendant constituted a consensual encounter, during which the defendant voluntarily consented to show the officer the crack cocaine that she was holding in her hand neither of which required reasonable suspicion that defendant was engaging in illegal activity."
 {¶ 7} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. See State v. Morgan, Montgomery App. No. 18985, 2002-Ohio-268. "But the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.
 {¶ 8} In State v. Taylor (1995), 106 Ohio App.3d 741,747-749, 667 N.E.2d 60, we summarized the three categories of interactions between citizens and law enforcement officers:
 {¶ 9} "The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away.United States v. Mendenhall (1980), 446 U.S. 544, 553,100 S.Ct. 1870, 1876, 64 L.Ed.2d 497, 504-505. The request to examine one's identification does not make an encounter nonconsensual.Florida v. Rodriguez (1984), 469 U.S. 1, 4-6, 105 S.Ct. 308,83 L.Ed.2d 165, 169-171; Immigration Naturalization Serv. v.Delgado (1984), 466 U.S. 210, 221-222, 104 S.Ct. 1758,1765-1766, 80 L.Ed.2d 247, 258-259. Nor does the request to search a person's belongings. Florida v. Bostick (1991),501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389. The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. Mendenhall, supra, 446 U.S. at 554,100 S.Ct. at 1877, 64 L.Ed.2d at 509; Terry v. Ohio (1968),392 U.S. 1, 16, 19, 88 S.Ct. 1868, 1877, 1878, 20 L.Ed.2d 889, 903,904. Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the next two Supreme Court categories.
 * * * {¶ 10} "The second type of encounter is a `Terry stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. Terry,supra. A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. Mendenhall, supra, 446 U.S. at 553,100 S.Ct. at 1877, 1878, 64 L.Ed.2d at 508; Terry, supra,392 U.S. at 16, 19, 88 S.Ct. at 1877, 1878, 20 L.Ed.2d at 903, 904.
 {¶ 11} "The Supreme Court in Mendenhall listed factors that might indicate a seizure. These factors include a threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, and blocking the citizen's path. Id. at 554,100 S.Ct. at 1877, 64 L.Ed.2d at 509. A police officer may perform an investigatory detention without running afoul of the Fourth Amendment as long as the police officer has a reasonable, articulable suspicion of criminal activity. Terry, supra,392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 906.
 * * * {¶ 12} "The third type of encounter involves a seizure that is the equivalent of an arrest. To perform such a seizure the police officer must have probable cause. State v. Barker
(1978), 53 Ohio St.2d 135, 7 O.O.3d 213, 372 N.E.2d 1324. A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested. Id. at syllabus."
Id. at 747-479; see also State v. Smith, Montgomery App. No. 20165, 2004-Ohio-1171.
 {¶ 13} In granting Cook's motion to suppress, the trial court concluded that her encounter with Barnes constituted an investigatory stop. Following State v. Nealen (1992),84 Ohio App. 3d 235, 616 N.E.2d 944, the court reasoned that, under the present circumstances, a reasonable person would not have felt free to leave. The trial court further found that Barnes lacked any reasonable articulable suspicion that Cook was or was about to be involved in any illegal activity. As stated by the court, "[s]he was simply walking down the street in a high crime area." The court stated that Cook did not appear to be engaged in any criminal activity nor did she appear to be armed. Accordingly, the court concluded that Cook was seized in violation of her Fourth Amendment rights.
 {¶ 14} We agree with the trial court's ruling. When Officer Barnes first made contact with Cook, he was seated in his cruiser at a stop sign, facing northward, with Cook walking eastbound toward him along a sidewalk. At this juncture, Cook was approximately fifteen to twenty feet from the intersection. As Cook neared the cruiser, Barnes asked her several questions, including "what was going on," "if Cook lived in the neighborhood," and "why was she walking eastbound when Dennison was the other way." There is no evidence that Barnes' posture or demeanor was threatening or intimidating. In our judgment, these questions would not, without more, cause a reasonable person to believe that she was required to stop and to respond. Such questions are simply inoffensive requests for information. Accordingly, we see no basis to conclude that this portion of the contact between Cook and Officer Barnes was anything more than a consensual encounter. See State v. Hurt (May 5, 1995), Montgomery App. No. 14882 (distinguishing Nealen).
 {¶ 15} However, by the end of Barnes' questions, Cook was located approximately three feet from the officer's cruiser door. Barnes testified that he had observed that Cook's left hand was closed in a fist. Unlike his prior inquiries, Barnes ordered Cook to "open up your hand so I can see what's inside of it." Based on the language that he used, Barnes commanded — not requested — that Cook open her hand Moreover, although Barnes indicated that he was stopped at a stop sign, he further testified that to continue walking eastbound on Second Street, Cook would have had to go around the cruiser. Thus, Barnes was impeding her path of travel. Although Barnes remained seated in his vehicle at this time and Cook was not precluded from walking in a different direction, in our judgment, a reasonable person would not have felt free to ignore the order of a police officer and to walk away under these circumstances. See State v. Hamilton (Dec. 20, 1995), Montgomery App. No. 14601 (officer's question to defendant about "what was in his hand" rendered the encounter an investigatory stop). Thus, the trial court properly concluded that Cook was subject to an investigatory detention when she was ordered to open her hand
 {¶ 16} We likewise agree with the trial court that Barnes lacked a reasonable articulable suspicion that Cook was engaging or about to engage in illegal activity, thus justifying the detention. As noted by the trial court, Barnes testified that he could not see anything protruding from Cook's fist, and she did not appear to be threatening him or armed in any way. Accordingly, Barnes was subject to an unlawful seizure when she was ordered to open her hand The trial court thus properly granted Cook's motion to suppress the drugs as well as her subsequent incriminating statements.
 {¶ 17} The assignment of error is overruled.
 {¶ 18} The order of suppression will be sustained, and the case will be remanded for further proceedings consistent with this opinion.
Fain, P.J. and Grady, J., concur.