The STATE of Ohio, Appellee,

v.

COSBY, Appellant.

[Cite as *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22293.

Decided Aug. 1, 2008.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Michele D. Phipps, Assistant Prosecuting Attorney, for appellee.

William D. Rohrkaste, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Ernest Cosby, appeals from his conviction and sentence for possession of crack cocaine.

{¶ 2} In overruling defendant's motion to suppress the evidence, the trial court made the following findings of fact:

{¶ 3} "On September 22, 2006, at about 4:00 a.m., Montgomery County Sheriff Deputy Brian Shiverdecker was on routine patrol in the area of the intersection of North Dixie Drive and Needmore Road in Harrison Township in Montgomery County, Ohio when he noticed a pedestrian, identified as the Defendant Cosby, in the crosswalk area of that intersection, waiting for the light to change. While in the area and waiting at the light at that intersection, Shiverdecker noticed Defendant looking suspiciously at his cruiser and that he waited two full cycles of the traffic light to cross. Shiverdecker knew by experience that this was an area of high criminal and drug activity, including crack and powder cocaine, marijuana and heroin. (On cross-examination, Deputy Anthony Rolfes indicated that pedestrians out in that area at that time of day were usually involved in buying drugs or stealing something. Detective Chad Begley noted that this area was adjacent to two very high crime area housing complexes—Northcrest Gardens and Northland Village.)

{¶ 4} "As such, Shiverdecker turned his cruiser around and approached Cosby on Needmore Road between North Dixie and School Road, bringing his cruiser to a stop in the right hand lane of travel on Needmore Road, illuminating his emergency lights for officer safety. After Shiverdecker had done this, Cosby began approaching the cruiser whereupon he was instructed to stop that approach by Shiverdecker. As this occurred, Cosby was observed placing his hand in his back pocket, and throwing a plastic baggie on the ground and then stepped back, placing his foot on top of it. Shiverdecker acknowledged on cross examination that he had trained a spotlight on Cosby as he approached the cruiser, perhaps better illuminating this concealment activity.

{¶ 5} "Deputy Rolfes had received a call from Shiverdecker for backup on a 'suspicious person' dispatch and arrived shortly thereafter.

{¶ 6} "After Cosby dropped the plastic baggie and secreted it by standing on it, Shiverdecker handcuffed the Defendant, asked Rolfes to retrieve the baggie and, once the baggie was found to contain a substance recognized by the officers to be crack cocaine, Cosby was then placed under arrest for drug possession, and transported to the county jail."

{¶ 7} Defendant was indicted on one count of possession of crack cocaine in an amount greater than five grams but less than ten grams, a third-degree felony. R.C. 2925.11(A), (C)(4)(c). Defendant filed a motion to suppress the evidence, arguing that police lacked the reasonable suspicion of criminal activity necessary to justify the initial stop and detention. Following a hearing, the trial court overruled defendant's motion to suppress, concluding that the initial encounter between defendant and police was consensual, and in any event, police had sufficient reasonable suspicion of criminal (drug) activity to justify a *Terry* investigative stop and detention of defendant. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 8} Defendant entered a plea of no contest to the cocaine-possession charge, pursuant to a negotiated plea agreement. In exchange, the state recommended a minimum one-year sentence. The trial court accepted defendant's no-contest plea, found him guilty, and sentenced defendant to a one-year prison term.

{¶ 9} Defendant timely appealed to this court from his conviction and sentence. He challenges only the trial court's decision overruling his motion to suppress the evidence.

{¶ 10} Defendant failed to include in his brief a statement of the assignment(s) of error required by App.R. 16(A)(3). Defendant argues that the trial court should have suppressed as fruit of his illegal seizure the crack cocaine he threw on the ground, because the initial stop and detention of his person by police, which occurred before defendant discarded the crack cocaine, was illegal. We take that to be the error he assigns.

{¶ 11} In a motion to suppress, the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498.

{¶ 12} The trial court concluded that the initial encounter between defendant and Deputy Shiverdecker was consensual in nature and did not implicate the Fourth Amendment. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and to walk away. *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497; *State v. Cook*, Montgomery App. No. 20427, 2004-Ohio-4793, 2004 WL

2008776. If the person's liberty is restrained by police, however, a seizure has occurred that implicates the Fourth Amendment protections and requires legal justification. *Mendenhall; State v. Gonsior* (1996), 117 Ohio App.3d 481, 690 N.E.2d 1293.

{¶ 13} A seizure occurs when, in view of all of the circumstances surrounding the incident, the police officer has either by physical force or a show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests and walk away or otherwise terminate the encounter. *Mendenhall; State v. Williams* (1990), 51 Ohio St.3d 58, 61, 554 N.E.2d 108; *Cook.* Factors that might indicate a seizure include the threatening presence of several police officers, the display of a weapon, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be required, approaching the person in a nonpublic place, and blocking the citizen's path. *Mendenhall; Cook.*

{¶ 14} The evidence in this case demonstrates that when Deputy Shiverdecker first observed defendant, he was coming from a Sunoco station located on the corner of North Dixie Drive and Needmore Road, which is open 24 hours a day. Defendant was carrying a plastic bag and had apparently made a purchase at the Sunoco station. Deputy Shiverdecker watched as defendant waited at the intersection for two full cycles of the traffic light and then crossed Needmore Road and began walking east on Needmore. Deputy Shiverdecker pulled his police cruiser up behind defendant and stopped in the right-hand lane of travel on Needmore, between North Dixie Drive and School Drive. Deputy Shiverdecker activated his emergency overhead lights for safety, because of approaching traffic, and he also activated the white spotlight on his cruiser and aimed it at defendant. At that point, defendant turned around and began to approach Shiverdecker's cruiser, whereupon Shiverdecker ordered defendant to stop and wait where he was while Shiverdecker called in the stop. Defendant complied with Deputy Shiverdecker's commands.

{¶ 15} Given these facts, we disagree with the trial court's conclusion that the initial encounter between defendant and Deputy Shiverdecker was consensual. A seizure occurred when Deputy Shiverdecker activated the emergency overhead lights on his cruiser as he approached defendant, and then activated the white spotlight on his cruiser and aimed it at defendant. *Gonsior,* 117 Ohio App.3d 481, 690 N.E.2d 1293. Even if that show of authority was insufficient to constitute a seizure, Deputy Shiverdecker's command to defendant to stop and wait where he was while Shiverdecker called in the stop, which defendant complied with, was clearly sufficient to constitute a seizure of defendant's person per *Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. In our judgment, no reasonable person would have felt free to ignore Deputy Shiverdecker's order and walk away

under these circumstances. *Gonsior.* This seizure of defendant's person required legal justification to be lawful. Id.

{¶ 16} Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to only a few well-recognized exceptions. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. One of those exceptions is the rule regarding investigative stops, announced in *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, which provides that a police officer may stop an individual to investigate unusual behavior, even absent a prior judicial warrant or probable cause to arrest, where the officer has a reasonable, articulable suspicion that specific criminal activity may be afoot.

{¶ 17} An officer's inchoate hunch or suspicion will not justify an investigatory stop. Rather, justification for a particular seizure must be based upon specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warrant that intrusion. The facts must be judged against an objective standard: whether the facts available to the officer at the moment of seizure or search would warrant a person of reasonable caution in the belief that the action taken was appropriate. Id. See also *State v. Grayson* (1991), 72 Ohio App.3d 283, 594 N.E.2d 651.

{¶ 18} Whether an investigative stop is reasonable must be determined from the totality of the circumstances that surround it. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. The totality of the circumstances are "to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews* (1991), 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271, citing *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859; *Freeman,* supra, at 295, 18 O.O.3d 472, 414 N.E.2d 1044.

{¶ 19} The trial court concluded that even if the initial encounter between defendant and Deputy Shiverdecker constituted a seizure, Shiverdecker had sufficient reasonable, articulable suspicion of criminal (drug) activity to justify his *Terry* investigative stop and detention. Again, we disagree. The state argues in its brief that there was sufficient reasonable suspicion of criminal activity to justify a *Terry* investigative stop and detention once Shiverdecker observed defendant drop the plastic baggie containing crack cocaine on the ground and then attempt to conceal it by placing his foot over it. We agree with that contention. The problem is that defendant had already been seized for Fourth Amendment purposes by Deputy Shiverdecker *before* Defendant discarded the baggie of crack cocaine. Shiverdecker admitted that fact in his testimony:

{¶ 20} "Q. And of course, Deputy, the alleged throwing of the plastic bag containing the contraband or alleged contraband, excuse me, did not occur until after you'd made a stop on Mr. Cosby.

{¶ 21} "A. Correct."

{¶ 22} The evidence clearly shows that after Deputy Shiverdecker pulled his police cruiser near defendant, activated its emergency overhead lights, and commanded defendant to stop and wait where he was, Shiverdecker called in the stop to his police dispatcher. While Shiverdecker was calling in this stop, he observed defendant reach into his back pocket and toss a plastic baggie on the ground and then place his foot on top of it. As we previously discussed, prior to this conduct, defendant had already been seized or detained by Shiverdecker, and therefore this attempt by defendant to discard and conceal illegal drugs cannot serve as a legal basis for defendant's detention because it did not occur until *after* defendant had already been detained.

{¶ 23} With respect to any conduct on defendant's part that Deputy Shiver-decker observed *prior* to detaining defendant that might be indicative of and give rise to a reasonable suspicion of criminal activity, a careful review of this record shows that Deputy Shiverdecker articulated absolutely none. The only thing that Deputy Shiverdecker articulated as a basis for detaining defendant was that he was standing at 4:00 a.m. at an intersection in a high-crime and drug-activity area where Shiverdecker had made several drug arrests and that defendant waited for two full cycles of the traffic light before he finally crossed the street. Deputy Shiverdecker testified:

{¶ 24} "Q. There was nothing in his behavior that was indicative of any particular criminal conduct prior to the time that you stopped him, true?

{¶ 25} "A. It was suspicious that he stood at the stoplight for two cycles.

{¶ 26} "Q. What particular criminal conduct would that make you suspicious of?

{¶ 27} "A. Basically, he was up to no good."

{¶ 28} Shiverdecker also testified:

{¶ 29} "A. There's not much traffic at four o'clock in the morning in that area. Typically, most people that we find in that area that are out at four o'clock in the morning are either looking for drugs or possibly breaking into vehicles or businesses."

{¶ 30} Deputy Shiverdecker found defendant to be suspicious because he was present at 4:00 a.m. in a high-crime and drug-activity area, and defendant waited for two full cycles of the traffic light at Needmore Road and North Dixie Drive to expire before he finally crossed the street. In order to create a legal

basis justifying a seizure, the basis of an officer's suspicions requires some nexus between the individual he detains and some particular criminal conduct. *Gonsior*, 117 Ohio App.3d 481, 690 N.E.2d 1293. That is lacking here.

{¶ 31} At the time Deputy Shiverdecker stopped and detained defendant, Shiverdecker observed no actions on defendant's part indicative of drug activity or any other criminal conduct. Simply being present in a high-crime or drug-activity area, by itself, is not indicative of criminal activity, nor does it justify a *Terry* investigative stop. *State v. Carter* (1994), 69 Ohio St.3d 57, 630 N.E.2d 355. Furthermore, not crossing the street at the first available opportunity when the traffic light and walk sign would allow it, however curious, is not indicative of criminal activity, no matter how many cycles of the traffic light a person waits for before crossing the street. Deputy Shiverdecker's own testimony reveals that he detained defendant on nothing more than an inchoate hunch, which is legally insufficient to justify a *Terry* investigative stop. *Gonsior*, 117 Ohio App.3d 481, 690 N.E.2d 1293. Shiverdecker's detention of defendant was not supported by the required reasonable suspicion of criminal activity and therefore constituted an illegal seizure that violated defendant's Fourth Amendment rights.

{¶ 32} Nevertheless, the state argues that even if the stop and detention/seizure of defendant was illegal, defendant lacks standing under the Fourth Amendment to challenge the seizure and admissibility of the baggie of crack cocaine because he voluntarily abandoned it, thereby relinquishing any expectation of privacy he had in that property. *Freeman*, 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. We disagree. When a person disposes of or abandons property in response to illegal police conduct, such as an illegal seizure or search, that person is not precluded from challenging the admissibility of the evidence because his act of abandonment is not voluntary and is a product or fruit of that illegal police conduct. *State v. Harbison* (2007), 141 N.M. 392, 156 P.3d 30; *United States v. Beck* (5th Cir., 1979), 602 F.2d 726; *Monahan v. State* (Fla.App.1980), 390 So.2d 756; LaFave, Search and Seizure (2004), 683–684, Section 2.6(b).

{¶ 33} As we previously noted, defendant's act in discarding the baggie of crack cocaine by throwing it on the ground took place after he had submitted to Deputy Shiverdecker's show of authority and been stopped and detained by Shiverdecker, which we concluded was an illegal seizure of defendant's person. The test for voluntary abandonment involves a determination of whether the abandonment was a product of the illegal stop and seizure of defendant. *State v. Mathews*, Montgomery App. No. 19120, 2002-Ohio-4970, 2002 WL 31105392. In *Mathews*, we concluded that it was not. In *Mathews*, the defendant voluntarily chose to abandon the property as he fled from police, before he was seized for Fourth Amendment purposes by either some physical touching of his person or

submission to a show of authority by police, which is necessary for a seizure. *California v. Hodari* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690. Defendant in this case did not abandon the property until after he had submitted to Deputy Shiverdecker's show of authority and been seized/detained. Under those circumstances, we conclude that the evidence was abandoned in response to the unlawful police conduct, the illegal seizure, and therefore defendant does not lack standing to object to the admissibility of that evidence. *State v. Taub* (1988), 47 Ohio App.3d 5, 547 N.E.2d 360.

{¶ 34} Defendant's assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FAIN and WALTERS, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.