[Cite as *State v. Cooperstein*, 2015-Ohio-4508.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26638 |
| | : | |
| v. | : | Trial Court Case No. 14-TRC-4108 |
| | : | |
| JOEL M. COOPERSTEIN | : | (Criminal Appeal from |
| | : | Miamisburg Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of October, 2015.

. . . . . . . . . . .

CHRISTINE L. BURK, Atty. Reg. No. 0050559, Miamisburg Prosecutor's Office, 10 North First Street, Miamisburg, Ohio 45342
        Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 West Second Street, Suite 603, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Joel M. Cooperstein appeals from his conviction and sentence following a no-contest plea to one count of operating a motor vehicle while under the influence of

alcohol (OVI), a first-degree misdemeanor.

{¶ 2} In his sole assignment of error, Cooperstein contends police lacked a reasonable, articulable suspicion of criminal activity to justify an investigative stop that led to his arrest. Therefore, he argues that the trial court should have sustained his motion to suppress the evidence supporting his OVI conviction.

{¶ 3} The trial court held a January 21, 2015 hearing on Cooperstein's suppression motion. The only witness was Shawn Todd, a Miami Township police officer. He testified that he was patrolling in a commercial area near Prestige Place and State Route 741 at 1:48 a.m. on July 3, 2014. While doing so, he observed Cooperstein's car stopped on a dead-end access road. Todd explained that the road went off of Prestige Place and ran between the rear of the Discount Tire Company and the Double Tree Hotel. (Tr. at 7, 61). However, the access road did not connect to the tire store or hotel parking lot. (*Id.* at 61-62). It ran to a Cub Foods parking lot, but access to that lot was blocked by a barricade because the grocery store had gone out of business. (*Id.* at 7, 61). Todd acknowledged that the access road was "not a through road to or from anywhere" and was "not travelled normally." (*Id.* at 7, 62). He also testified that thefts had been reported from the hotel parking lot, and he knew the area had problems with prostitution and drugs. (*Id.*). He knew about these problems because he had roughly 19 years of experience as a patrol officer, and he "actively enforce[d] those crimes in that area[.]" (*Id.* at 5, 59).

{¶ 4} Based on Cooperstein's presence on a normally-untraveled access road to nowhere in the middle of the night in a commercial area known for thefts, drugs, and prostitution, Todd decided to approach the stopped vehicle. As Todd attempted to do so in his cruiser, Cooperstein drove away. (*Id.* at 8). Todd followed and made a traffic stop.

(*Id.*). He proceeded to interact with Cooperstein, who appeared to be under the influence of alcohol. (*Id.* at 10-11). The officer then performed field-sobriety tests. Based on Todd's observations and Cooperstein's performance on the tests, the officer arrested him for driving under the influence. (*Id.* at 36).

{¶ 5} In a February 20, 2015 entry and order, the trial court overruled Cooperstein's suppression motion, reasoning:

> The only real issue in this case is the propriety of the stop of the Defendant's motor vehicle. The basis for the Defendant's motion is that the officer did not observe the Defendant commit any traffic offenses.
>
> From the testimony it appears that the Officer initiated contact with the Defendant based on specific and articulable facts, which when taken together with rational inferences from those facts, warranted the stop. The Officer observed the Defendant's vehicle parked and running at the end of a dead-end street at 1:45 a.m. in a high crime area where thefts, prostitution, and drug activity are a common occurrence. The Officer used his years of experience to determine, within the parameters outlined in *Terry v. Ohio*, that his suspicion of criminal activity was reasonable, which justified his stopping the Defendant's vehicle.

(Doc. #17 at 1).

{¶ 6} On appeal, Cooperstein argues that Todd lacked a reasonable, articulable suspicion of criminal activity to justify stopping hm. Cooperstein asserts that he was on a "legal road" with painted lines and a stop sign, that he had not committed any traffic violations, that there was nothing suspicious about his vehicle, and that police were not

specifically looking for him for any reason. He insists that his mere presence on the road at that time of night in a high crime area was not enough to justify a *Terry* stop. In support, Cooperstein contends the facts of his case are analogous to *State v. Rhude*, 91 Ohio App.3d 623, 632 N.E.2d 1391 (12th Dist.1993), *State v. Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563, and *State v. Lindsey*, 2d Dist. Montgomery No. 24943, 2012-Ohio-3105.

{¶ 7} "In reviewing a decision of a trial court on a motion to suppress, an appellate court gives broad deference to a trial court's findings of fact. * * * But whether the facts found by the trial court justify suppression of the evidence is a question of law subject to de novo review." *State v. Anderson*, 2d Dist. Montgomery No. 24678, 2012-Ohio-441, ¶ 10. Here the facts, as established by Todd's suppression-hearing testimony, are not in dispute. Applying those facts to the legal issue before us, we find that Todd had a reasonable, articulable suspicion of criminal activity justifying an investigative stop of Cooperstein's vehicle.

{¶ 8} Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 29 L.Ed.2d 889 (1968), an officer may conduct an investigative stop "if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent." *State v. Burdette*, 2d Dist. Montgomery No. 25587, 2013-Ohio-4395, ¶ 11, citing *Terry* at 20-21, 30-31. "An officer's inchoate hunch or suspicion will not justify an investigatory stop. Rather, justification for a particular seizure must be based upon specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warrant that intrusion. The facts must be judged against an objective standard: whether the facts available to the officer at the moment of seizure or search

would warrant a person of reasonable caution in the belief that the action taken was appropriate." *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862, 895 N.E.2d 868, ¶ 17 (2d Dist.).

{¶ 9} Here Officer Todd did identify specific and articulable facts that, along with rational inferences, created a reasonable suspicion of criminal activity. He saw Cooperstein's vehicle stopped near 2:00 a.m. on a dead-end access road that previously had led to a now-defunct grocery store. According to Todd, the road no longer led anywhere and had been barricaded at one end. Todd knew from personal observation and experience that this access road was not normally travelled. He knew too that the area had problems with thefts, prostitution, and drugs—including thefts from the nearby hotel parking lot. The totality of these facts supported an objectively reasonable belief that Cooperstein may have been involved in criminal activity. This is particularly true given the absence of any apparent, legitimate reason for Cooperstein's vehicle to be where Todd observed it. In our view, the circumstances known to the officer warranted further investigation under *Terry*.

{¶ 10} In reaching our conclusion, we find the case law on which Cooperstein relies to be of limited assistance. In *Rhude*, police observed the defendant driving appropriately around 1:30 a.m. in an area where several burglaries had been reported. He turned down one driveway before pulling back out, driving a short distance, and pulling into another driveway. *Rhude* at 625-626. The Twelfth District found no articulable suspicion for an investigative stop, reasoning:

> In the present case, Officer Wallace did not observe appellee driving erratically or violating any traffic or other laws. Appellee was driving at a

reasonable speed of approximately thirty m.p.h. in a thirty-five m.p.h. zone. The fact that a person pulls out of one driveway and into another a short distance down the road in an area where several burglaries had been reported is not sufficient to constitute reasonable suspicion, particularly where one of the driveways leads to the person's own residence. The stop of appellee under these circumstances cannot rest on merely a hunch or vague suspicion.

*Id.* at 626.

{¶ 11} In *Studley*, police observed the defendant driving a van a little slower than the posted speed limit around 3:15 a.m. As the defendant turned into a residential plat in Beavercreek, police ran the license plate and determined that the van was registered to an owner in Riverside. *Studley* at ¶ 2-3. Police were aware of approximately 40 unsolved vehicle break-ins and thefts in the area of the plat within the preceding month. *Id.* at ¶ 3. An officer followed the van, whose occupants keep looking back and moving around as it slowed down and sped up through intersections before eventually circling back near where it first had been seen. *Id.* On appeal, this court found (with one judge dissenting) no articulable suspicion for a traffic stop or a search of the van, reasoning:

According to [the officer], in the course of the four to five minutes that he followed the van before initiating the stop, he observed no traffic violations nor indicia of criminal activity. Furthermore, the trial court's characterization of the area as a "high crime area" is not supported by the evidence. A rash of vehicle thefts does not make a residential neighborhood a high crime area, which is normally characterized by drugs, guns and other

consistent criminal activity.

Even if we were persuaded of the lawfulness of the initial stop, the facts do not justify a request to go on a fishing expedition for evidence of some prior theft. There were no additional facts gleaned from the stop to support the officer's initial suspicion regarding criminal activity. Thus, when a motorist is not observed violating any traffic or other laws, and where a police officer is not specifically looking for a particular individual or vehicle, the officer lacks reasonable suspicion to stop and search said vehicle.

*Id.* at ¶ 61-62.

**{¶ 12}** In *Lindsey*, police similarly observed the defendant driving below the speed limit in a residential area in Washington Township around 3:00 a.m. The officer who saw the defendant knew that there had been a series of break-ins in Washington Township but not limited to the area where the officer was patrolling. *Lindsey* at ¶ 2-3. The defendant slowed and braked when he observed the officer's patrol car. The officer followed the defendant's vehicle until it started to repeat a circular path it already had travelled. At that time, the officer made a traffic stop. *Id.* at 4. The trial court subsequently sustained the defendant's motion to suppress evidence found during the stop. On the State's appeal, this court found the case indistinguishable from *Studley*, reasoning:

Under the totality of the circumstances, Dep. Fazzari did not possess a reasonable, articulable suspicion to initiate a traffic stop of Lindsey. Dep. Fazzari admitted that Lindsey did not commit any traffic or equipment violation justifying a traffic stop. Although the immediate area had been

subject to a string of vehicle break-ins in recent months, no break-ins had been reported on that date of the stop, nor was anyone matching Lindsey's description or the description of his vehicle implicated therein. While it was early in the morning, Dep. Fazzari observed nothing indicating that criminal activity was afoot. In fact, Dep. Fazzari conceded that he "wasn't sure what [Lindsey] was doing," and that was his basis for initiating the stop. Clearly, Dep. Fazzari did not possess a reasonable, articulable suspicion that Lindsey had committed a criminal act justifying the initial stop. Simply being unsure of what a suspect is doing is a wholly insufficient basis upon which to stop and question an individual.

Upon review, we find that the instant case is not distinguishable from our recent decision in *Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563. Both cases involved individuals traveling in slowly moving vans at approximately three a .m. in residential areas that had recently been struck with a series of vehicle break-ins. In neither case did the arresting officer observe the suspects commit any traffic or equipment violations. The only apparent difference is that the officer in *Studley* observed individuals in the van make furtive movements prior to the initiation of the traffic stop, whereas in the instant case, Dep. Fazzari did not observe any furtive movements until after he turned on his flashing lights. This minor difference, however, is irrelevant. * * *

*Id.* at ¶ 18-19.

{¶ 13} Having reviewed *Rhude*, *Studley*, and *Lindsey*, we find that they are

sufficiently distinguishable to be of limited assistance given the fact-sensitive nature of the issue before us. In each of those cases, there was little suspicious about the presence of the defendant's vehicle on the road other than the late hour and the fact that crimes had been reported. In *Rhude* the defendant merely had pulled into driveways, and in *Studley* and *Lindsey* the defendants had appeared to be traveling somewhat aimlessly. These circumstances were not enough to create a reasonable suspicion of criminal activity.[1] The facts of the present case bear little resemblance to the facts of *Rhude*, *Studley*, or *Lindsey*, making a comparison of the cases not particularly useful. Cooperstein was not seen driving appropriately late at night in a residential area where some crimes had been reported. Rather, he was seen parked on an access road that effectively went nowhere, where cars normally did not travel, in the middle of the night in a commercial area known for thefts, drugs, and prostitution. In our view, these circumstances are articulably and sufficiently more suspicious than the circumstances police observed in *Rhude*, *Studley*, and *Lindsey*.

{¶ 14} Although the issue is perhaps a close one, we conclude that Officer Todd identified specific and articulable facts that, along with rational inferences, created a reasonable suspicion of criminal activity and warranted further investigation under *Terry*. Accordingly, the trial court properly denied Cooperstein's suppression motion.

{¶ 15} The assignment of error is overruled, and the trial court's judgment is

---

[1] We note, however, that in *Studley*, one member of the appellate panel dissented, finding that an investigative stop was justified. *See Studley* at ¶ 68-70 (Grady, J., dissenting). Thereafter, in *Lindsey*, the author of the present opinion wrote a separate concurrence explaining that, although he had concurred in judgment in *Studley*, he had not been troubled so much by the initial stop of Studley's vehicle as he had been by a subsequent search of the vehicle and its occupants. *Lindsey* at ¶ 26-27 (Hall, J., concurring).

affirmed.

. . . . . . . . . . . .

FAIN, J., concurs.

FROELICH, P.J., dissenting:

{¶ 16} I dissent.

{¶ 17} The officer, while on State Route 741, observed the Appellant's vehicle apparently stopped on a nearby dead-end road. By the time the officer was able to catch up, the Appellant had proceeded to the intersection of 741 and Prestige Place and stopped at the stop sign.

{¶ 18} If the vehicle were still stopped on the access road, the officer would have been justified in stopping the Appellant. However, with the facts in this record, there was not a reasonable and articulable basis to believe that the occupant of the vehicle was involved in criminal activity.

. . . . . . . . . .

Copies mailed to:

Christine L. Burk
John S. Pinard
Hon. Robert W. Rettich, III