[Cite as *State v. Montgomery*, 2020-Ohio-513.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28404 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-4179 |
| | : | |
| DARYL A. MONTGOMERY | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of February, 2020.

. . . . . . . . . . .

STEPHANIE COOK, Atty. Reg. No. 0067101, Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

MICHELLE M. MACIOROWSKI, 7333 Paragon Road, Suite 170, Dayton, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Daryl A. Montgomery appeals from his conviction following a no-contest plea to one count of criminal trespass, a fourth-degree misdemeanor.

{¶ 2} Montgomery advances three assignments of error. First, he challenges the trial court's denial of a suppression motion prior to his plea. He argues that unlawful detention and questioning by a Dayton police officer led to the discovery that he had been "trespassed" from the apartment complex where he was found. Second, he contends the trial court erred in precluding testimony about an alleged pattern of police conduct involving stopping people at apartment complexes "which trains citizens to believe that their encounters with police * * * are not consensual." Third, he claims the trial court erred in not considering the "current culture surrounding citizens' interaction with police officers, not recognizing that the very presence of police may imply to citizens that they have been detained[,] and by not acknowledging that a private citizen may put himself at risk of harm by attempting to walk away from a police officer."

{¶ 3} The record reflects that Dayton police officer Thadeu Holloway and his partner were patrolling the Limestone Court Apartments around 10:00 p.m. on July 11, 2018. While doing so, they heard loud music outside of an apartment where seven or eight people were congregated in a common area. Holloway approached the group on foot and advised one of the residents to turn the music down. The resident said she understood and agreed to do so. At the suppression hearing, Holloway described this brief exchange as "cordial."

{¶ 4} After addressing the music issue, Holloway separately asked each of the people outside the apartment if they would mind providing him with their name, birthday, and Social Security number. Once again, he described this request as a "cordial" one

made in a "conversational" tone. He testified that Montgomery was cooperative and orally provided the information without objection. Holloway's partner processed the information at the police cruiser and discovered that Montgomery had been "trespassed" from the property. As a result, the officers arrested him for criminal trespass. On cross-examination, Holloway denied demanding information or identification from anyone at the scene. He also denied telling any of the people outside that they could not leave. When asked specifically what he said, Holloway responded:

> I believe I walked up and said, "Good evening. Can you guys please turn down your music? It's very loud." The apartment owner said, "Of course." I said, "What's going on tonight?" She said, "We are just hanging out drinking and trying to listen to some music and trying to relax." I then asked, "Would you guys [mind] providing me your information?"

(Suppression Tr. at 23.)

{¶ 5} The only other witness at the suppression hearing was Montgomery. He testified that the two officers approached on foot with their hands on their holsters and told him to give them his identification. Montgomery then clarified that the officers approached the group and said, "We need to see all your I.D.s, identification cards." (*Id.* at 28.) According to Montgomery, he responded by attempting to leave the porch and go into the apartment, but Holloway touched a taser and stopped him, saying, "Don't you go in that house." (*Id.* at 29.) Montgomery testified that he came back and sat down because he did not want to get shot or tased. (*Id.* at 29-30.) He stated that he was "scared" and did not feel free to leave. (*Id.* at 30-31.)

{¶ 6} Defense counsel then attempted to question Montgomery about whether

similar incidents had occurred in the past where police officers had confronted a group of people outside an apartment. The prosecutor raised a relevance objection. Defense counsel then responded:

> It's a pattern your honor. When there's a group of individuals at Dayton Premier Management or DMHA it is common for police to basically stop the group and I.D. everybody. This trains individuals who happen to have to live there because they have no place else that they can reasonably afford to comply. When we have an individual such as this then we try to just narrow the scope: Oh, it's only this particular time here and the courts go right along with allowing yeah this time it was just consensual when, in fact, there is a pattern of this occurring where people are stopped routinely just to see if they are doing anything wrong and let's I.D. them and let's run their names. Let's see if they are on the trespass list when there is no objective reason to do so. Then it's always characterized as well in this particular single instance it was all just consensual.

(*Id.* at 32-33.)

{¶ 7} The trial court sustained the objection and refused to allow defense counsel to question Montgomery about other similar incidents.

{¶ 8} On cross-examination, the prosecutor then engaged in the following exchange with Montgomery:

Q. Mr. Montgomery, this officer never pulled his gun out on you, correct?

A. No ma'am.

Q. He never pulled his taser out on you?

A. No ma'am.

Q. Never pulled pepper spray out on you?

A. No ma'am.

Q. Didn't curse at you or yell at you that night?

A. (Inaudible)

Q. Asked for your identification and you provided it to him, correct?

A. Yes ma'am.

Q. You didn't tell him no?

A. No—well I told him I didn't have my I.D. but—

Q. But you didn't say, "I'm not gonna tell you who I am"?

A. (Inaudible) Everybody else was saying that but I—

Q. You didn't say that?

A. Yeah I didn't—I didn't want to get shot.

(*Id.* at 36-37.)

{¶ 9} Based on the evidence presented, the trial court overruled Montgomery's suppression motion. In a March 28, 2019 decision and entry, the trial court found that neither officer prevented anyone from leaving the scene. (Doc. #18.) The trial court held "that suppression of the statements of the Defendant is not justified based on the testimony presented[.] (*Id.* at 2). Following the trial court's ruling, Montgomery entered a no-contest plea. The trial court accepted the plea and found him guilty. It imposed a 30-day jail sentence with credit for two days served and the remainder suspended. It also ordered him to pay a $50 fine and court costs. Finally, the trial court ordered Montgomery not to return to any Greater Dayton Premiere Management properties while he is on the

trespass list.

{¶ 10} In his first assignment of error, Montgomery contends he did not voluntarily disclose his identifying information to police. In support, he cites his own testimony that Holloway instructed him not to leave the area as the officers rested their hands on their tasers or gun belts. Montgomery also professes to have had a limited understanding of his rights and his ability to refuse to cooperate. He notes the absence of evidence that either officer explained his rights or told him that his cooperation was not mandatory. He asserts that the trial court erred in not properly considering his "particular education, intelligence and experience with police" when assessing whether the encounter was consensual. For these reasons, he argues that the trial court erred in overruling his suppression motion.

{¶ 11} When ruling on a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). We must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, we then must determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 12} With the foregoing standards in mind, we see no error in the trial court's ruling. "Consensual encounters occur when the police merely approach a person in a

public place and engage the person in conversation, and the person remains free not to answer and to walk away." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 21, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Consensual encounters are not seizures, and Fourth Amendment guarantees are not implicated. *State v. Taylor*, 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60 (2d Dist.1995), citing *Mendenhall* at 554. "A request for identification, in and of itself, is not unconstitutional, and is ordinarily characterized as a consensual encounter[.]" *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002 WL 63196, *2 (Jan. 18, 2002).

{¶ 13} We are unpersuaded by Montgomery's argument that his encounter with Holloway was non-consensual. Although Montgomery claimed he did not feel free to leave or to refuse to cooperate when Holloway spoke to him, "the test we apply is an objective one." *State v. Wehner*, 2d Dist. Montgomery No. 27217, 2017-Ohio-2788, ¶ 10, citing *State v. Jirac*, 2d Dist. Montgomery No. 15-CR-756, 2016-Ohio-8187, ¶ 10. "The focus is on the officer's conduct, not the defendant's subjective state of mind." *Id.*; *see also California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991) ("*Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."). Factors that might indicate a non-consensual encounter "include the threatening presence of several police officers, the display of a weapon, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be required, approaching the person in a nonpublic place, and blocking the citizen's path." *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862,

895 N.E.2d 868, ¶ 13 (2d Dist.).

{¶ 14} Having reviewed the suppression-hearing transcript, we see nothing either officer did that would support an objective belief that Montgomery was not free to decline Holloway's request for identifying information. The trial court assessed witness credibility and plainly credited Holloway's version of events, including the officer's denial that he told any of the people present that they could not leave. As set forth above, the record reflects that Holloway approached the group of people gathered outside the apartment and asked a resident to turn down the music. He then asked each of the people present outside if they would mind providing him with their name, birthday, and Social Security number. Holloway characterized his request as "cordial" and "conversational" in tone. He testified that Montgomery was cooperative and provided the information without objection. The officer testified that he did not yell at or threaten Montgomery and that he remained several feet away. In his own testimony, Montgomery acknowledged that Holloway did not yell, curse, or pull a weapon. In light of the trial court's rejection of Montgomery's claim that Holloway instructed him not to leave, we see nothing either officer did that would cause a reasonable person to believe he was not free to refuse the request for information. Accordingly, the first assignment of error is overruled.

{¶ 15} In his second assignment of error, Montgomery challenges the trial court's evidentiary ruling precluding his testimony about an alleged pattern of police conduct involving stopping people at apartment complexes "which trains citizens to believe that their encounters with police * * * are not consensual." Montgomery argues that he personally did not feel free to leave when he encountered Holloway because of this pattern of prior police encounters. (Appellant's brief at 9.)

**{¶ 16}** "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." (Citation omitted.) *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43. The issue is "whether the trial court acted unreasonably, arbitrarily, or unconscionably" in sustaining the State's objection to the proposed testimony. *Id.* We see no abuse of discretion here for at least two reasons. First, as set forth above, the focus is on the officer when determining whether police-citizen interaction is a consensual encounter. The question is whether the officer did anything that reasonably might be construed as a show of force requiring obedience. Whether police officers have a history of checking the identification of apartment residents has no bearing on what Holloway did in this case. Second, if what police officers did in prior instances involved merely approaching residents and asking to see the residents' identification, then those instances, like the present one, involved consensual encounters no matter how many times they occurred. On the other hand, if the prior instances involved a coercive show of force, then they are dissimilar to what occurred in Montgomery's case. Either way, the trial court reasonably precluded testimony about the prior incidents. The second assignment of error is overruled.

**{¶ 17}** In his third assignment of error, Montgomery contends the trial court erred in not considering the "current culture surrounding citizens' interaction with police officers, not recognizing that the very presence of police may imply to citizens that they have been detained[,] and by not acknowledging that a private citizen may put himself at risk of harm by attempting to walk away from a police officer." Montgomery argues that the existing consensual-encounter standard focusing on the officer's actions is inadequate because

it does not sufficiently consider the fear that some citizens have of police or the possibility that citizens may put themselves in danger by attempting to walk away.

{¶ 18} We are unpersuaded by Montgomery's argument. Again, case law instructs that "[t]he focus is on the officer's conduct, not the defendant's subjective state of mind." *Wehner,* 2d Dist. Montgomery No. 27217, 2017-Ohio-2788, at ¶ 10. The question is "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628, 111 S.Ct. 1547, 113 L.Ed.2d 690. We decline to adopt a standard that "the very presence of police" is tantamount to detention whenever a citizen believes it to be so. Such a standard would extinguish the consensual encounter, as all police-citizen interaction, by definition, requires the "very existence of police." We also reject the notion that a consensual encounter does not exist where a citizen subjectively fears being shot in the absence of objective evidence to support such a fear. The third assignment of error is overruled.

{¶ 19} Based on the foregoing reasoning, we affirm the judgment of the Dayton Municipal Court.

. . . . . . . . . . . . .


TUCKER, P.J. and WELBAUM, J., concur.


Copies sent to:

Stephanie Cook
Michelle M. Maciorowski
Hon. Daniel G. Gehres