[Cite as *State v. Belcher*, 2011-Ohio-5015.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

     Plaintiff-Appellee          :    C.A. CASE NO. 24385

vs.                              :    T.C. CASE NO. 10CR2436/1

JOSHUA M. BELCHER                :    (Criminal Appeal from
                                      Common Pleas Court)
     Defendant-Appellant         :

. . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Prosecuting Attorney; Laura M. Woodruff, Asst. Pros. Attorney, Atty. Reg. No. 0084161, P.O. Box 972, Dayton, OH 45422
     Attorney for Plaintiff-Appellee

Charles W. Slicer, III, Atty. Reg. No. 0059927, 111 W. First Street, Suite 518, Dayton, OH 45402
     Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Joshua M. Belcher, appeals from his two convictions for theft, which were entered on Belcher's pleas of no contest after the trial court overruled Defendant's motion to

suppress evidence.

{¶ 2} Belcher and two co-defendants were charged by indictment with two counts of theft, R.C. 2913.02(A)(1). Count One alleged that Belcher and his co-defendants had stolen property having a total value of five hundred dollars or more from nine different persons, a second degree felony. Count Two alleged that Belcher and one co-defendant had stolen a credit card belonging to another, which per R.C. 2913.71(A) is a fifth degree felony. Belcher entered not guilty pleas.

{¶ 3} Belcher filed a Crim.R. 12(C)(3) motion to suppress evidence. (Dkt. 12). The motion sought to suppress "all evidence obtained from Defendant who was a passenger in an automobile" and "all evidence obtained as a result of information obtained from Defendant as the result of the stop of Defendant who was a passenger in an automobile." The motion further states:

{¶ 4} "As grounds for this Motion, Defendant asserts that the stop and search of Defendant and the subsequent seizure of evidence was accomplished without the benefit of a duly issued and executed search warrant or was outside the scope of a duly issued and authorized search warrant, was not conducted with the knowledgeable consent of the Defendant, was not based upon probable cause, nor within the scope of a search incident to a lawful arrest. Further, it does not appear that exigent circumstances required an immediate

search of Defendant.  Such a search and seizure constitutes a denial of Defendant's right as guaranteed by the Fourth Amendment to the United States Constitution and by the Constitution of the State of Ohio.

{¶ 5} "Defendant further asserts that any statements made by the Defendant to any law enforcement officers were obtained in violation of Defendant's rights guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution and by Article One of the Ohio constitution, as such statements were not made voluntarily and were made without the benefit of counsel, without full and adequate explanation of Defendant's rights, and without a knowing and intelligent waiver of these rights."

{¶ 6} The Memorandum In Support of Defendant's motion to suppress identified no statement Defendant had made or other "information" police obtained from him.  Indeed, the facts leading to Defendant's arrest which are set out in the Memorandum explain that Defendant was stopped, searched, and arrested while he and his two co-defendants were "walking down the street," which belies Defendant's assertion that he was a "passenger in an automobile." Further, the arguments Defendant presented in the Memorandum are limited to a contention that the officer who detained him lacked a reasonable and articulable suspicion of criminal activity required by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20

L.Ed.2d 889, in order to stop and detain Defendant and his companions, rendering any evidence derived from that illegality subject to suppression.

{¶ 7} The court held a hearing on Defendant's motion to suppress evidence on October 12, 2010. The only witness called to testify was Clayton Police Officer Howard Titus, who was called by the State. At the conclusion of the evidence, the court heard arguments. Defendant argued that he was stopped and detained by Officer Titus illegally, because the officer lacked the necessary reasonable and articulable suspicion of criminal activity required by *Terry*. (T. 24-25). The State argued that the officer acted on a reasonable and articulable suspicion of criminal activity, because articles seen in plain view in Defendant's backpack reasonably connected him to theft offenses that had occurred in that area. The court took the matter under advisement.

{¶ 8} On October 27, 2010, the court made the following oral findings of fact:

{¶ 9} "Officer Howard Titus of the Clayton Police Department was working on August the 7th, 2010. He was working the day shift, which is 5:45 a.m. to 2:00 p.m. He's been with Clayton since 1988, and is a part-time patrol officer working one to two days a week.

{¶ 10} "On his way to work at approximately 5:20 a.m. on Old Salem Road in the city of Clayton, he observed three males walking

in the grass. It was dark. He found it unusual, because foot traffic is rare in that area, particularly given the time of the morning, also. He did not recognize any of the individuals, but was aware that there had been significant recent criminal activity in the area, including thefts from vehicles, garages, and residential burglaries. Those individuals were within one quarter of a mile of the police department. There is no sidewalk in that area and the individuals were walking in the grass.

{¶ 11} "Officer Titus had taken recent reports in the area involving events in the overnight hours that involved theft offenses. Officer Titus was in the uniform of the day. He went to the police station, got in a marked cruiser and returned then to the area, saw the same three individuals in the area of Taywood and Old Salem.

{¶ 12} "He approached those individuals in his vehicle. He observed one of those individuals, the defendant, Mr. Belcher, carrying a backpack. As he was pulling – it was at a fire station – as he was pulling into that area, Mr. Belcher put the backpack down, walked away from it, and then Mr. Belcher and the two individuals with him approached Officer Titus.

{¶ 13} "Officer Titus sought to identify the three individuals, because he felt it was unusual for there to be pedestrian traffic in that neighborhood at that time of the day. One of the

individuals said that they were looking for Main Street, but they were walking in the opposite direction.

{¶ 14} "Officer Titus called for backup. Mr. Belcher appeared to be nervous. Mr. Belcher and the two people he was with approached Officer Titus. They were patted down. The backpack was retrieved from near a vehicle and it contained a radar detector, a purse and a power cord. None of the individuals had identification and they were arrested approximately 20 feet from the backpack.

{¶ 15} "The Court first finds that the defendant had no standing to challenge the search of the backpack. The protection afforded by the Fourth Amendment does not implicate – is not implicated in every situation between the police and a citizen. The test to determine whether a person has been seized is whether, in view of all the circumstances, a reasonable person would believe that he was not free to leave. There's no evidence that the officer physically – well, even if that were the case, the defendant abandoned the backpack long before any seizure took place. An individual does not have standing to object to a search of property that he has voluntarily abandoned.

{¶ 16} "Abandoned property is determined – is a question of intent and is inferred from words spoken, acts done, and other objective facts. The Court determines that the property was

abandoned, as the defendant put it down, near a vehicle, walked away from it, evidencing his intention to abandon it. Therefore, the defendant did not have standing to object to the search of that property, and his motion is overruled in its entirety. The Motion to Suppress is overruled." (T. 2-4).

{¶ 17} Defendant subsequently entered no contest pleas to the two theft offenses. He was sentenced to serve two concurrent twelve month terms of incarceration, to pay restitution to the victims of his theft offenses, and to serve three year terms of post-release control. Defendant filed a notice of appeal.

ASSIGNMENT OF ERROR

{¶ 18} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS."

{¶ 19} Defendant argues that the trial court erred when it overruled his motion to suppress evidence, again relying on the *Terry* violation he argued in the trial court.

{¶ 20} The State argues that the trial court did not err when it found that Defendant abandoned the backpack and its contents. Alternatively, the State argues that the entire incident was a consensual encounter, to which the Fourth Amendment has no application.

{¶ 21} Encounters are consensual where the police merely approach a person in a public place, engage the person in

conversation, request information, and the person is free not to answer and walk away. *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497, 504-505; *State v. Cook*, Montgomery App. No. 20427, 2004-Ohio-4793. If the person's liberty is restrained by police, however, a seizure has occurred which implicates the Fourth Amendment protections and requires legal justification. *Mendenhall; State v. Gonsior* (1996), 117 Ohio App.3d 481.

{¶ 22} A seizure occurs when, in view of all of the circumstances surrounding the incident, the police officer has either by physical force or a show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests and walk away or otherwise terminate the encounter. *Mendenhall; State v. Williams* (1990), 51 Ohio St.3d 58, 61; *Cook*. Factors that might indicate a seizure include the threatening presence of several police officers, the display of a weapon, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be required, approaching the person in a non-public place, and blocking the citizen's path. *Mendenhall; Cook*.

{¶ 23} When Officer Titus approached the three men he asked the three men to "step over here." Officer Titus introduced himself and told the men he had stopped them because he didn't

recognize them and there had been a lot of problems with vehicle break-ins and thefts in that area, and he wanted to identify them. Officer Titus patted each man down, and then ran each man's name and identifying information through the computer in his police cruiser.

{¶ 24} Officer Titus clearly indicated that the men were to remain where they were while he ran their names, saying: "hang on for a second, gentlemen, make sure you're not wanted and we'll go from there." Officer Titus admitted that the men were not free to leave, and that he would have pursued them had they run. None of the men had any outstanding warrants. While Officer Titus was obtaining that information, police back-up arrived. Officer Titus then walked over to where Defendant had put down the backpack and looked at it. In the top of the open backpack, Officer Titus observed a radar detector, a woman's purse, and a power cord. At that point Officer Titus arrested Defendant for theft.

{¶ 25} Based upon these facts, we conclude that while the encounter between Defendant and Officer Titus began as a consensual encounter, it developed into a *Terry* investigative stop that involved a seizure of Defendant's person. *Mendenhall.* In our judgment, under these circumstances, which include Officer Titus' request for the men to "step over here" and remain there while he ran their names and identifying information, a direction with

which the men complied, a reasonable person would not have felt free to ignore Officer Titus' directions and walk away. *Id*. This seizure of Defendant's person required legal justification in order to be lawful. *Gonsior*.

{¶ 26} In *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862 at ¶16-18, this court observed:

{¶ 27} "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to only a few well-recognized exceptions. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. One of those exceptions is the rule regarding investigative stops, announced in *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, which provides that a police officer may stop an individual to investigate unusual behavior, even absent a prior judicial warrant or probable cause to arrest, where the officer has a reasonable, articulable suspicion that specific criminal activity may be afoot.

{¶ 28} "An officer's inchoate hunch or suspicion will not justify an investigatory stop. Rather, justification for a particular seizure must be based upon specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warrant that intrusion. The facts must be judged against an objective standard: whether the facts available to the officer at the moment of seizure or search would warrant a person

of reasonable caution in the belief that the action taken was appropriate. Id. See also *State v. Grayson* (1991), 72 Ohio App.3d 283, 594 N.E.2d 651.

{¶ 29} "Whether an investigative stop is reasonable must be determined from the totality of the circumstances that surround it. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. The totality of the circumstances are 'to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' *State v. Andrews* (1991), 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271, citing *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859; *Freeman,* supra, at 295, 18 O.O.3d 472, 414 N.E.2d 1044."

{¶ 30} On the facts in this case, Officer Titus did not have reasonable, articulable suspicion of criminal activity to justify a *Terry* investigative stop and detention of Defendant.  The conduct observed by Officer Titus, three men he did not know, one of whom, was wearing a backpack, who were walking alongside Old Salem Road at 5:20 in the morning in an area where there had been several recent vehicle break-ins and theft offenses, fails to demonstrate a nexus between the men and some particular criminal conduct such as theft.  No matter how unusual someone wearing a backpack and walking alongside Old Salem Road at 5:20 a.m. may be, that conduct itself is innocent or at most ambiguous, and not indicative of

any criminal activity.

{¶ 31} Furthermore, the mere fact that this innocent or ambiguous conduct occurred in an area where crimes had occurred does not make it criminal in character or give rise to a reasonable suspicion of specific criminal activity. *State v. Maldonado* (Sept. 24, 1993), Montgomery App. No. 13530. Simply being present in a high crime area, by itself, is not indicative of criminal activity, nor does it justify a *Terry* investigative stop. *Cosby*. Officer Titus detained Defendant on nothing more than an inchoate hunch, which is legally insufficient to justify a *Terry* investigative stop. *Id*; *Gonsior*. The *Terry* investigative stop and detention/seizure of Defendant's person in this case was therefore illegal and violated Defendant's Fourth Amendment rights.

{¶ 32} The trial court concluded, however, that Defendant voluntarily abandoned the backpack before any investigatory stop and seizure of Defendant took place, and that as a result Defendant lacks standing to challenge the legality of the search of the backpack. In *State v. Dennis*, 182 Ohio App.3d 674, 2009-Ohio-2173, at ¶38-39, 41, we stated:

{¶ 33} "It has long been settled that '[a] defendant has no standing under the Fourth Amendment to the United States Constitution to object to a search and seizure of property that

he has voluntarily abandoned.' *State v. Freeman* (1980), 64 Ohio St.2d 291 [18 O.O.3d 472], 414 N.E.2d 1044, paragraph two of the syllabus. As the Ohio Supreme Court has reiterated:

{¶ 34} "'Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States v. Cowan* (C.A.2, 1968), 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Manning* (C.A.5, 1971), 440 F.2d 1105, 1111. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *United States v. Edwards,* supra, 441 F.2d at 753; *Katz v. United States* (1967), 389 U.S. 347, 83 [88] S.Ct. 507 [19 L.Ed.2d 576].' Id. at 297 [18 O.O.3d 472, 414 N.E.2d 1044], quoting *United States v. Colbert* (C.A.5, 1973), 474 F.2d 174, 176." *Russell,* 2007-Ohio-137, 2007 WL 93202, at ¶ 21–22.

{¶ 35} "*    *    *

{¶ 36} "The government bears the burden of establishing, by a preponderance of the evidence, that the defendant abandoned the property at issue. *State v. Dubose,* 164 Ohio App.3d 698,

2005-Ohio-6602, 843 N.E.2d 1222, ¶ 43."

{¶ 37} The evidence demonstrates that as Officer Titus approached and began exiting his cruiser, Defendant took off the backpack he wore. Defendant did not throw or "discard" the backpack, but rather placed it on the ground of the parking lot of the fire station where he stood, and then walked some twenty feet over to Officer Titus, in response to the officer's direction to "step over here." Defendant never left the scene where he placed the backpack and, having been instructed to remain where he was standing, Defendant did not have an opportunity thereafter to return and retrieve the backpack. Under these facts and circumstances, Defendant did not voluntarily abandon or relinquish his interest in the backpack, and it cannot be said that he no longer retained a reasonable expectation of privacy with regard to it at the time of the search. *Dennis*.

{¶ 38} The trial court erred when it found that Defendant lacks standing to object to the seizure and search of his backpack and its contents because he abandoned them when he placed the backpack on the ground. Even though the trial court's decision overruling Defendant's motion on that basis was likewise erroneous, we may affirm by deciding the suppression issue on grounds different from those determined by the trial court so long as the evidentiary basis on which we decide the legal issue concerned was adduced

before the trial court and made a part of its record. *State v. Peagler* (1996), 76 Ohio St.3d 496.

{¶ 39} The Fourth Amendment prohibits unreasonable searches and seizures of "persons" and their "houses, papers, and effects." The search and seizure of Defendant's backpack was performed without benefit of a judicial warrant. Warrantless searches are per se unreasonable. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Warrantless searches and seizures are not illegal, however, if one of the several exceptions to the Fourth Amendment's warrant requirement is demonstrated.

{¶ 40} The State relied on the "plain view" exception to the warrant requirement, which permits seizure of objects falling in the plain view of an officer who has a right to be in a position to see them. *Harris v. United States* (1968), 390 U.S. 234, 88 S.Ct. 932, 19 L.Ed.2d 1067. It is undisputed that the contents of the backpack were in Officer Titus's plain view when he walked over to the backpack and looked at it. The issue is whether he was then legally in a position to do that.

{¶ 41} We found that what began as a consensual encounter became a detention for purpose of *Terry* when Officer Titus subsequently instructed Defendant and his companions to remain where they were standing, before he walked over to the backpack Defendant had put on the ground. Because that detention lacked the reasonable and

articulable suspicion of criminal activity that *Terry* requires, the detention and any search it involved were illegal. The exclusionary rule requires suppression of evidence seized in the course of unlawful search. *Weeks v. United States* (1914), 232 U.S. 383, 58 L.Ed.2d 652, 34 S.Ct. 341.

{¶ 42} The exclusionary rule also requires suppression of derivative evidence: that is, evidence that is the product of the primary evidence illegally seized, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes "so attenuated as to dissipate the taint" of the particular illegality. *Nardone v. United States* (1939), 308 U.S. 338, 341, 84 L.Ed.307, 60 S.Ct. 266. Such evidence is exempt from suppression under the "independent source" doctrine. *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 392, 64 L.Ed.319, 40 S.Ct. 182. Because the purpose of the exclusionary rule is to put police in the same, not a worse, position that they would have been in had no illegal conduct occurred, the independent source rule generally applies to "all evidence acquired in a fashion untainted by the illegal evidence-gathering activity." *Murray v. United States* (1988), 487 U.S. 533, 537-538, 108 S.Ct. 2529, 101 L.Ed.2d 472, 480.

{¶ 43} After the backup assistance he requested had arrived,

Officer Titus walked to where Defendant put the backpack on the ground when the consensual encounter began. Because Defendant placed the backpack on the ground before the illegal detention occurred, the plain view of that evidence that Officer Titus subsequently acquired was untainted by the *Terry* illegality the subsequent detention involved. Further, the backpack was located in a public place, where the backpack and its contents were open to view and plainly visible, and there is no reasonable expectation of privacy regarding such property. Katz, Ohio Arrest, Search and Seizure (2008), §14.5. Accordingly, the trial court did not err when it overruled Defendant's motion to suppress evidence obtained in the search and seizure of Defendant's backpack that Officer Titus performed.

{¶ 44} The assignment of error is overruled. The judgment of conviction from which the appeal is taken will be affirmed.

FAIN, J. And DONOVAN, J., concur.

Copies mailed to:
Laura M. Woodruff, Esq.
Charles W. Slicer, III, Esq.
Hon. Mary Katherine Huffman