[Cite as *State v. Fleming*, 2013-Ohio-503.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellant                      :        C.A. CASE NO.    2012 CA 59

v.                                               :        T.C. NO.    12CR118

JERMAINE FLEMING                                 :        (Criminal appeal from
                                                          Common Pleas Court)

    Defendant-Appellee                       :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___15th___ day of ___February___, 2013.

. . . . . . . . . .

ANDREW R. PICEK, Atty. Reg. No. 0082121, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellant

JON PAUL RION, Atty. Reg. No. 0067020 and NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 130 W. Second Street, Suite 2150, P. O. Box 1262, Dayton, Ohio 45402
    Attorneys for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**  This matter is before the Court on the Notice of Appeal of the State of

Ohio,

filed September 5, 2012. The State appeals from the August 30, 2012 judgment of the trial court that sustained Jermaine Fleming's motion to suppress. We hereby affirm the judgment of the trial court.

{¶ 2}   On February 21, 2012, Fleming was indicted on three counts of trafficking in drugs, in violation of R.C. 2925.03(A)(2), three counts of possession of drugs, in violation of R.C. 2925.11(A), and two counts of having a weapon while under disability, in violation of R.C. 2923.13. On June 29, 2012, Fleming filed his Motion to Suppress, and on July 11, 2012, he filed a Supplemental Motion to Suppress. Attached to the supplemental motion is a 2003 Judgment Entry of Conviction, pursuant to which Fleming was convicted of aggravated burglary, in violation of R.C. 2911.11, and possession of drugs, in violation of R.C. 2925.11. Fleming received a seven year sentence. The Judgment Entry of Conviction provides in part:

> The Court has further notified the defendant that post release control
>
> is mandatory in this case *up to* a maximum of five years, as well as the
>
> consequences for violating conditions of post release control imposed by the
>
> parole board under Revised Code Section 2967.28. The defendant is ordered
>
> to serve as part of this sentence any term of post release control imposed by
>
> the Parole Board, and any prison term for violation of that post release
>
> control. (Emphasis added).

{¶ 3}   In his supplemental motion, based upon the above language regarding post-release control, Fleming asserted as follows:

> The basis for this supplemental motion is that the evidence obtained
>
> by the state was obtained as a result of Defendant being subject to [Adult

Parole Authority] supervision, pursuant to a term of post-release control. However, Defendant was not properly on post-release control, and that portion of his sentence is void. Because Defendant should not have been on post-release control, all searches which occurred as a result of his supervision were improper, and all evidence obtained as a result of those searches must be suppressed.

{¶ 4} The court held a hearing on the motion to suppress on August 24, 2012, at which Parole Officer Tony Barrett testified that he is employed by the Adult Parole Authority, and that on August 25, 2010, he placed Fleming under supervision after he was released from prison for the 2003 offenses. Barrett identified State's Exhibit 1 as Fleming's Conditions of Supervision. The ninth condition of supervision listed on the form provides as follows:

I agree to a search, without a warrant, of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. *Notice: Pursuant to section 2967.131 of the Revised Code, Officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any property which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision.*

{¶ 5} Barrett stated that he approved a residential placement for Fleming as part of

his supervision, located at 18 West Perrin Avenue, and that in March, 2011, he received information that Fleming resided at 1924 Ontario Avenue, in violation of the terms of his supervision. Barrett stated that he later received information that Fleming had been involved in a shooting, and that he conducted a search of 1924 Ontario Avenue on February 13, 2012 and arrested Fleming. Barrett stated that he observed Fleming's vehicle outside of the Ontario address on that date, and that he contacted the Springfield police for assistance. Barrett stated that a "young lady" answered the door of the residence. He stated that when he asked if Fleming was present, she asked Barrett who he was. When Barrett told her that he was Fleming's parole officer, he testified that she "backed away and kind of looked over towards another area. I walked in. There he was."

{¶ 6} The following exchange occurred:

Q. When you placed the defendant under arrest, did you see anything of interest in the immediate area at that time?

A. No. I placed him under arrest. I asked him for the keys to the vehicle. He said they were in the back room. I went to the back room to get the keys. That's where most of his property was located within that back room.

Came back out at that point and a speaker was turned around and the back of it was exposed with a hole in it. At that point there was a .9 millimeter pistol that was exposed.

Q. When you saw the .9 millimeter pistol, what did you do?

A. * * * I don't know what we would call it. Did an administrative

search, searched in the common areas and located what seemed to be powder in some of the kitchen drawers.

\* \* \*

Q. When you went to go get the defendant's keys out of the bedroom, who instructed you that they were back there?

A. Mr. Fleming.

Q. Why did you go get the keys?

A. Because I wanted to search the car as well.

Q. And he told you to go get the keys out of the bedroom, that they were located there?

A. Yes.

{¶ 7} Barrett testified that he believed the powder that he found to be cocaine. Barrett stated that he and the responding police officers "backed out of the house, secured the premises, and then that's when the search warrant was secured." Barrett stated that at that time, the Springfield police officers took charge of the investigation.

{¶ 8} On cross-examination, Barrett stated that the .9 millimeter weapon was in plain view, "exposed right there." He stated that he had credible information that Fleming resided at the residence from other individuals as well as his own surveillance. Barrett stated that his arrest and search of the residence occurred pursuant to the 2003 judgment entry of conviction. Specifically, he testified that his authority to arrest Fleming and conduct a search is based upon the ninth condition of supervision in the Conditions of Supervision.

{¶ 9} On redirect, Barrett stated that numerous police officers initially responded

to the scene to assist him, "[d]ue to the fact that there was a weapon involved in the shooting." The following exchange occurred:

> Q. Mr. Barrett, if you can elaborate on the process of how you received that information when somebody is placed on post-release control for us.
>
> A. * * * A certain number of items that come with the packet (sic). The journal entry is quite often in the packet.
>
> We may have to go to court at times, I believe people have to get the journal entry, but I don't know the exact date, 2007, 2008, 2009, there was a Barns[1] case, which there was a lawsuit against the State of Ohio regarding the entry whether the language was correct as far as PRC goes.
>
> To my knowledge, there was 17,000 plus cases reviewed by the State. We had to get the journal entries, send them up to the State and they reviewed that to see if the language was appropriate.
>
> Mr. Fleming's language was deemed appropriate once it was Barns reviewed and so that was - -
>
> MR. RION: Objection as to what was deemed appropriate by a source. I mean, he can speculate.
>
> MR. PICEK: I think that's something he was told and this is a

---

[1] *See State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 71 ("in the absence of a proper sentencing entry imposing postrelease control, the parole board's imposition of postrelease control cannot be enforced.")

preliminary hearing so it would be admissible.

MR. RION: I don't think that's what he testified to.

THE WITNESS: Well, let me rephrase that. In my computer when I get somebody, all of their information is in there, so the Barns language approved PRC.

BY MR. PICEK: So to the best of your understanding that information lets you believe and know that somebody has reviewed this and said his language is correct as far as they are concerned?

A. Correct. We had a vast number of individuals who came out on PRC that were removed from PRC during this whole process. Mr. Fleming was not one of them.

* * *

THE COURT: Back to your objection, I'll overrule the objection, but the Court is going to do its own independent analysis to determine whether or not he was properly on PRC.

I am not going to rely on that, so I'll consider it just for purposes of what he knew and understood at the time.

{¶ 10} The following exchange occurred on recross-examination:

Q. * * * you don't recall specifically what analysis was done on this particular case as it relates to Barns or any other decision?

A. No. All I know is we were required to pull all the journal entries from our cases, submit those to Columbus to our central office. At that point

they made a determination as to whether or not the language in the journal entry was sufficient or not.

Q. So you're speaking in general terms about all of your entries, not specifically about Mr. Fleming's?

A. Correct. If the language was not correct, and it was insufficient, then those individuals were removed from PRC and were no longer on supervision.

{¶ 11} Detective Beau Collins of the Springfield Police Division testified that he is a narcotics detective, and that he was involved in the Fleming investigation. He stated that he received information from reliable confidential informants "as well as our own independent surveillance" that Fleming was engaged in drug activity at the Ontario address, and that he relayed that information to Barrett. Collins stated that on February 13, 2012, he received a call from Barrett. Collins stated that Barrett advised him about "an incident taking place involving Mr. Fleming where a gun had been shot at someone," and that Barrett intended to arrest him. Collins stated that he was not present when Fleming was arrested. He stated that Barrett subsequently advised him that a handgun had been found in plain view at the Ontario address, as well as powdered cocaine. Collins stated that he then prepared the affidavit for the search warrant based upon that information, and presented it to the judge, who signed it. Collins stated that he proceeded to the Ontario address to conduct the search. Collins identified several items that were found in the house related to drug activity that resulted in Fleming's indictment. He stated that he had no reason to believe that there was any defect in the imposition of post release control on Fleming from the 2003 case.

{¶ 12}   On cross-examination, Collins stated that he relied on the information that Barrett provided to him regarding what he found at Fleming's residence in preparing the affidavit for the search warrant.

{¶ 13}   We note that Defendant's Exhibit C is a copy of the transcript of Fleming's 2003 plea and sentencing hearing which reflects that the court advised Fleming in part as follows in the course of taking his plea:   "In addition, you would be subject to a period of post release control after release from prison, and it could be for up to five years of post release control under conditions determined by the parole board. * * *."   When the court proceeded to impose sentence, it made no mention of post release control.

{¶ 14}   We further note that Collins' affidavit in support of the search warrant provides in part as follows:

On February 13th, 2012 the Ohio Adult Parole Authority received information that Jermaine Fleming was residing at 1924 Ontario.   Tony Barrett of the Adult Parole Authority had also observed Fleming enter and leave the residence at 1924 Ontario regularly, and officers with the Springfield Police Division have also observed Jermaine Fleming at the residence while in the area.   Tony Barrett of the Adult Parole Authority went to 1924 Ontario to arrest Jermaine Fleming on an Adult Parole Authority Parole Violation.   While at the residence, Ohio Adult Parole authority Officer Tony Barrett located Jermaine Fleming, the resident of 1924 Ontario. While inside the residence of 1924 Ontario, a brief search was conducted by Officer Barrett pursuant to the rules of parole for Jermaine Fleming. Cocaine was located inside a room that had Jermaine Fleming's identification,

clothing and mail addressed to Jermaine Fleming. Jermaine Fleming is currently on parole for Aggravated Burglary, a felony of the First Degree and Possession of Drugs, a felony of the First Degree. He was released from prison and placed on parole on August 25, 2010.

The Springfield Police Intelligence/Narcotics Unit was contacted after the Cocaine was located and their assistance was requested.

The Springfield Police Division has received information from a reliable confidential source, who has provided reliable information in the past that has led to the arrest and conviction of individuals involved in the sale and trafficking of narcotics that Jermaine Fleming is currently engaged in the business of trafficking in narcotics at the above listed address.

There is at least one individual at the said dwelling that appears to be selling narcotics, profiting thereby.

{¶ 15}     After the hearing, the trial court sustained Fleming's motion to suppress on August 30, 2012. The court determined in part as follows:

The trial judge in the defendant's 2003 case never placed him on post-release control nor even mentioned post-release control at the sentencing hearing. He did mention post-release control at the change of plea hearing and in the sentencing entry, but in both instances he used the "up to" language when post-release control was in fact mandatory for a specific number of years - five.

* * *

* * * [T]he-post release control portion of the defendant's 2003 sentence is void. Therefore, he was not lawfully on post-release control and not lawfully under the supervision of the Adult Parole Authority when he was released from prison in August of 2010. The Conditions of Supervision, although executed by the defendant, never took lawful effect. As a result, [Officer] Barrett lacked the authority to conduct a warrantless search of the defendant's residence at 1924 Ontario, Springfield, Clark County, Ohio on February 13, 2012.

* * *

During Barrett's search of the defendant's residence, he observed powder cocaine and a 9mm handgun. His observations prompted the seeking of the search warrant and the powder cocaine itself was the probable cause upon which the search warrant was secured. As discussed above, Barrett's warrantless search of the defendant's residence at 1924 Ontario, while conducted in good faith, was nevertheless unlawful since the post-release control portion of the defendant's 2003 sentence is void. Accordingly, * * * the subsequent search warrant secured by Detective Collins, who was also acting in good faith, was improperly tainted by the information garnered by Barrett's unlawful search.

Detective Collins' search warrant affidavit unquestionably presented information derived from Barrett's unlawful search of the defendant's residence. His decision to seek the search warrant and his actual securing of the warrant were not independent of the information gained during the

unlawful entry.

In sum, the Court finds that Barrett's warrantless entry and search of the defendant's residence was unlawful since the post-release control portion of the defendant's 2003 sentence is void. As information garnered by Barrett's search prompted Detective Collins to seek and secure a search warrant for the premises, and Detective Collins included that information in his search warrant affidavit, the evidence obtained pursuant to the execution of the search warrant must be excluded.

{¶ 16}   The State asserts two assignments of error. The State's first assigned error is as follows:

"THE TRIAL COURT ERRED BY FINDING THE DEFENDANT WAS NOT PROPERLY PLACED ON POST RELEASE CONTROL IN 2003, AND THEREFORE FINDING THAT THE PAROLE SEARCH OF HIS RESIDENCE WAS AN ILLEGAL WARRANTLESS SEARCH."

{¶ 17}   As this Court has previously noted:

"Post-release control" involves a period of supervision by the Adult Parole Authority after an offender's release from prison that includes one or more post-release control sanctions imposed under R.C. 2967.28. R.C. 2967.01(N). "[A]mong the most basic requirements of post-release control notification per R.C. 2967.28 and the Ohio Supreme Court's existing precedent is that the court must both notify the offender of the length of the term of post-release control that applies to his conviction(s) and incorporate

that notification into its journalized judgment of conviction pursuant to Crim.R. 32(C)." * * * Post-release control is mandatory for some offenders and is imposed at the discretion of the Parole Board for others. * * * . *State v. Blackshear,* 2d Dist. Montgomery No. 24302, 2011-Ohio-2059, ¶ 11.

{¶ 18}     The State directs our attention in part to *State v. Lynch*, 9th Dist. Lorain No. 11CA010031, 2012-Ohio-2975.   Therein, Lynch's amended "sentencing entry imposed postrelease control and mistakenly set forth some discretionary language," namely that post-release control was mandatory "'up to' a maximum of five years." *Id.*, ¶ 2, 14.   After he completed his prison sentence, Lynch filed a motion to terminate post-release control supervision, which the trial court denied.   *Id.*, ¶3.   On appeal,   the Ninth District determined:

> because Lynch's entry "contained sufficient language to authorize the Adult
> Parole Authority to exercise postrelease control" over him, the trial court did
> not err in denying Lynch's motion to terminate postrelease control on the
> basis that the sentencing entry mistakenly included discretionary language,
> where the oral notification at the sentencing hearing properly advised Lynch
> of the terms of postrelease control.   *See Watkins* [*v. Collins*, 111 Ohio St.3d
> 425, 2006-Ohio-5082] at ¶ 53.   *Id.*, ¶ 14.

The State's reliance on *Lynch*, however, is misplaced, since the Ohio Supreme Court recently overruled that decision in *State v.Lynch,* Sup. Ct. No. 2012-1361, 2012-Ohio-5730 (Dec. 6, 2012), at ¶ 1, on the authority of *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960.

{¶ 19}   In *Billiter*, in a four-to-three decision, the Supreme Court of Ohio addressed a certified conflict between this Court and the Fifth District regarding "whether res judicata bars a criminal defendant from arguing that his plea is void due to an earlier postrelease-control sentencing error when the defendant has entered a plea of guilty to escape."   *Id.*, ¶ 1.   Billiter was originally sentenced in 1998 to three years in prison and to a mandatory term of post release control of "'up to a maximum of three (3) years,'" rather than the mandatory five-year period required by R.C. 2967.28(B) for a first degree felony.   *Id.*, ¶ 2.   Billeter did not appeal his sentence, and he was released from prison in 2001. Billeter was subsequently indicted for escape from his post release control supervision, and he pled guilty to the charge.   *Id.*, ¶ 3.   Billeter was placed on community control for three years, and he did not appeal. *Id.*   Billeter violated the terms of his community control, and "the trial court revoked his probation and sentenced him to six years' imprisonment for escape." *Id.*, ¶ 4.   Billeter did not appeal.

{¶ 20}   Four years later, Billeter filed a pro se motion to vacate his conviction for escape, asserting that "because the postrelease-control portion of his 1998 sentence was contrary to law - up to three years instead of the mandatory five - it was void."   *Id.*, ¶ 5. The trial court's decision overruling the motion was affirmed on appeal, and the Fifth District held that "based upon a habeas corpus case, *Watkins v. Collins*, 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78, the trial court's incorrect sentence had nevertheless given Billeter proper notice that he was subject to post-release control, and so the sentence was not void.   Consequently, res judicata applies to his conviction for escape." *Id.*   Billeter did not appeal to the Ohio Supreme Court. *Id.*   Thereafter, the Ohio Supreme court issued *State v.*

*Bloomer,* 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, "which held, '[I]n the absence of a proper sentencing entry imposing postrelease control, the parole board's imposition of postrelease control cannot be enforced.' *Id*. at 70." *Id*. (See fn. 1 herein). Billeter did not seek reconsideration of the Fifth District's decision. *Id*.

{¶ 21} In 2010, "Billeter, through counsel, moved to withdraw his 2004 guilty plea to escape, on the theory that he had never been legally placed on post-rease control. Therefore, he claimed, 'he is actually innocent' of the crime of escape and is serving a sentence that is a legal nullity. The trial court denied his motion, and the Fifth District affirmed." *Id*., ¶ 6. The Supreme Court of Ohio concluded as follows:

> [T]he trial court failed to sentence Billeter to a correct term of postrelease control. Accordingly, his sentence was void. [*State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraph one of the syllabus]. The trial court's incorrect sentence for postrelease control in 1998 was insufficient to confer jurisdiction upon the Adult Parole Authority to impose up to three years of postrelease control on Billiter. [*State v.*] *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 17. Although the Adult Parole Authority did place Billeter under supervision, *see*, R.C. 2921.01(E), and Billiter did violate the terms of that postrelease control in violation of R.C. 2921.34(A)(1), Billiter's escape conviction was based on an invalid sentence. Accordingly, the trial court was without jurisdiction to convict him on the escape charge. *Id*., ¶ 12.

{¶ 22} The majority noted as follows:

As we have consistently stated, if a trial court imposes a sentence that is unauthorized by law, the sentence is void. " 'The effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment.' " * * * We said in *Fischer* that a void postrelease-control sentence "is not precluded from appellate review by principles of res judicata, and may be reviewed at any time, on direct appeal or collateral attack." *Id.* at paragraph one of the syllabus.

*Id..*, at ¶ 10.

{¶ 23} Finally, we note this Court's decision in *State v. Adkins*, 2d Dist. Greene No. 2010-CA-69, 2011-Ohio-2819. Therein, "the trial court advised Adkins orally, and in its re-sentencing entry, that he was subject to mandatory post-release control for 'up to' five years," when he "was subject to mandatory post-release control for the entire five years." *Id.*, ¶ 6. Unlike Fleming, Adkins, upon his release from prison, filed a motion to vacate a void sentence and terminate post-release control. ¶ 1, 3. This Court determined that the "portion of the trial court's sentencing entry imposing post-release control is vacated." ¶ 14. This Court further noted, in addition to the specific scenario presented in *Adkins*, that

* * * cases will arise where a released prisoner is placed on technically incorrect post-release control and then has his premises searched under the APA's supervisory authority. If felony contraband is found, the "void" post-release control analysis vitiates the APA's supervision, and the agency's authority to search, which may result in the suppression of evidence, even if

obtained in good faith pursuit of its duties.   See *Blackshear.*

*Id.,* ¶ 11.

{¶ 24}   Fleming was advised that he "could be" subject to post-release control "for up to five years" in the course of entering his pleas, no mention of postrelease control was made in the course of his sentencing, and the judgment entry of conviction merely provides that postrelease control "is mandatory in this case up to a maximum of five years."   In other words, as the trial court correctly found, Fleming was not properly placed on post-release control. Accordingly, Fleming's sentence to post-release control is void, and Barrett's supervision and authority to search are accordingly null and void.   Since the trial court properly concluded that Fleming was not lawfully placed on post-release control in 2003, and that Barrett's search of his residence was an illegal warrantless search, the State's first assigned error is overruled.

{¶ 25}   The State's second assigned error is as follows:

"THE TRIAL COURT ERRED BY APPLYING THE EXCLUSIONARY RULE AND HOLDING THAT THE GOOD FAITH EXCEPTION DID NOT APPLY TO THE SEARCH OF THE DEFENDANT'S RESIDENCE BY THE POLICE WITH A SEARCH WARRANT."

{¶ 26}   As this Court has previously noted:

The Supreme Court established the "good faith" exception to the exclusionary rule in *United States v. Leon* (1984), 468 U.S. 897, 918-923, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677.   In doing so, the Supreme Court declined to apply the exclusionary rule when police reasonably and in good

faith relied upon a warrant subsequently declared to be invalid, because excluding evidence under such circumstances would not deter police misconduct. Id. at 922, 104 S.Ct. 3405, 82 L.Ed. 677. The good-faith inquiry established in *Leon* is confined to the objectively ascertainable question of whether a reasonably well-trained officer would have known that the search was illegal despite the issuance of a warrant; subjective beliefs of the officer are not to be considered. * * * The Supreme Court now prefers to discuss this issue in terms of an officer's "objectively reasonable reliance" on a warrant, commenting that the term "good faith" has perhaps been confusing. * * *State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410, ¶ 27 (2d Dist.).

{¶ 27} As this Court has further noted, however:

The derivative-evidence rule, or fruit-of-the-poisonous-tree doctrine as it is widely known, requires suppression of evidence that was seized in a seemingly lawful manner but about which police learned because of a prior constitutional violation such as an illegal search or seizure. *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939) * * * . The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence that is subsequently discovered and derivative of that prior illegality. *Id*.; *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 20 (2d

Dist.).

Derivative evidence is subject to exclusion "up to the point at which the connection with the unlawful search becomes so 'attenuated as to dissipate the taint' of the particular illegality. * * * Such evidence is exempt from suppression under the 'independent source' doctrine." *State v. Belcher,* 2d Dist. Montgomery No. 24385, 2011-Ohio-5015, ¶ 42. "[T]he independent source rule generally applies to 'all evidence acquired in a fashion untainted by the illegal evidence-gathering activity.' * * * ." *Id.*

{¶ 28} We agree with the trial court that Collins acted in good faith in obtaining a warrant and searching Fleming's residence; Collins testified that he understood Fleming to be on lawful post-release control. As noted above, however, Fleming was not properly placed under supervision, and the imposition of post-release control was unenforceable. As this Court noted in *Adkins*, the "'void' post-release control analysis vitiates the APA's supervision, and the agency's authority to search." The contraband subsequently seized by Collins did not arise from an independent source, but rather, as the trial court concluded, was wholly derivative of the initial illegal search which produced the weapon and the cocaine. Accordingly, the evidence obtained in Fleming's residence pursuant to the search warrant was subject to the exclusionary rule.

{¶ 29} The State's second assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.

Copies mailed to:

Andrew R. Picek
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Douglas M. Rastatter