[Cite as *State v. Sanders*, 2021-Ohio-275.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                 :

    Appellee,              :          CASE NO. CA2020-06-033

                            :          O P I N I O N
   - vs -                             2/1/2021

                            :

DONTA LAMONT SANDERS,     :

    Appellant.            :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019CR0000893


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 S. Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 E. Main Street, Batavia, Ohio 45103, for appellant


**S. POWELL, J.**

{¶ 1} Appellant, Donta Lamont Sanders, appeals the decision of the Clermont County Court of Common Pleas denying his motion to suppress. For the reasons outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

{¶ 2} On April 9, 2012, the Hamilton County Court of Common Pleas issued a

judgment entry sentencing Sanders to seven years in prison. This sentence was imposed by the Hamilton County Court of Common Pleas as a result of Sanders' guilty plea to one count of felonious assault. Within that same judgment entry, the Hamilton County Court of Common Pleas also sentenced Sanders to three years of community control. This sentence was imposed as a result of Sanders' guilty plea to one count of endangering children. The Hamilton County Court of Common Pleas ordered the two sentences to be served consecutively. By ordering the sentences to be served consecutively, the Hamilton County Court of Common Pleas noted that Sanders' three-year community control term would begin only after Sanders was released from prison on that seven year prison term. This judgment entry was issued by the Hamilton County Court of Common Pleas in Hamilton C.P. Case No. B 1107010.

{¶ 3} On January 7, 2019, Sanders was released from prison. Shortly thereafter, on January 16, 2019, the Hamilton County Court of Common Pleas issued an entry that noted Sanders' three-year community control term would run from January 7, 2019 to January 11, 2022. There is no dispute that the terms of Sanders' community control prohibited Sanders from owning, possessing, or carrying a firearm or other lethal weapon. There is also no dispute that the terms of Sanders' community control required Sanders to immediately notify his probation officer of any change in his home address, i.e., that he was no longer living with his sister in Hamilton County.

{¶ 4} Late in the day on August 14, 2019, Sanders' probation officer, Probation Officer Brian Urban, received information that Sanders was not living with his sister in Hamilton County as he had claimed, but was instead living with his girlfriend and her children in Clermont County. P.O. Urban also received information that Sanders may be in possession of a firearm. The next morning, on August 15, 2019, P.O. Urban contacted Agent Chris Wilson with the Clermont County Narcotics Unit for assistance. Following an

investigation into Sanders' whereabouts, a warrant was issued for Sanders' arrest based on allegations that Sanders had violated the terms of his community control. There is no dispute that the warrant for Sanders' arrest was executed on August 16, 2019 following a traffic stop of Sanders' vehicle initiated by officers from the Clermont County Sheriff's Office.

{¶ 5} Following Sanders' arrest, P.O. Urban conducted a search of Sanders' residence. The search was conducted in accordance with P.O. Urban's authority granted to him under the terms of Sanders' community control as Sanders' probation officer. According to P.O. Urban's arrest summary, the search of Sanders' residence resulted in the discovery of a .45 Smith & Wesson firearm under the mattress where Sanders' personal property (including Sanders' probation paperwork) was located.[1] The search also resulted in the discovery of an ammunition magazine in the pocket of Sanders' pants located a short distance away from where the firearm was located.

{¶ 6} Subsequent to this search, Sanders was transported to the Hamilton County Justice Center. Once there, Sanders telephoned his sister. During this call, Sanders admitted that the firearm discovered during the search of his residence belonged to him. Specifically, as P.O. Urban stated in his arrest report:

> In a later jail call to the defendants (sic) sister, he described to her where the gun was found although that information was never relayed to Mr. Sanders. They also discussed trying to convince [Sanders' girlfriend] to tell the probation department it was her gun in order to get him out of trouble.

{¶ 7} On August 21, 2019, a notice was filed with the Hamilton County Court of Common Pleas alleging Sanders had violated the terms of his community control. These violations included, but were not limited to, Sanders' possession of the firearm discovered

---

1. We note that contrary to P.O. Urban's arrest summary, Agent Wilson stated in his investigative report that the firearm was actually discovered in Sanders' "dresser drawer * * * wrapped up in Sanders' clothing." However, despite this discrepancy, there is no dispute that the firearm and ammunition magazine discovered during the search of Sanders' residence did, in fact, belong to Sanders.

during the search of his residence on August 16, 2019.

{¶ 8} On August 29, 2019, Sanders filed a motion with the Hamilton County Court of Common Pleas requesting the court amend its April 9, 2012 judgment entry "by vacating the requirement of community control and dismissing the community control violations." To support this claim, Sanders relied on the Ohio Supreme Court's decision in *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246. The Ohio Supreme Court's decision in *Hitchcock* was released on August 15, 2019, the day prior to Sanders' arrest.

{¶ 9} In *Hitchcock*, the Ohio Supreme Court held that "unless otherwise authorized by statute, a trial court may not impose community-control sanctions on one felony count to be served consecutively to a prison term imposed on another felony count." *Id.* at ¶ 1. Therefore, according to Sanders, because the Hamilton County Court of Common Pleas did not have the "statutory authority" to order his three year community control term to be served consecutively to his seven year prison term in its April 9, 2012 judgment entry, (1) its judgment entry "was void from its inception," (2) the judgment entry should be amended to vacate his three-year community control term, (3) he "should not be required to remain on community control in this case," and (4) any pending violation of his community control should be dismissed.

{¶ 10} On September 17, 2019, the Clermont County Grand Jury returned an indictment charging Sanders with one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). As stated in the bill of particulars, the charge arose based on the following:

> [O]n August 16, 2019 in Clermont County, Ohio, officers assisted [the] Hamilton County Probation Department in the arrest of the defendant, who had an active warrant. A search of the defendant's residence was conducted and a .45 Smith and Wesson handgun was located. Once at the Hamilton County Justice Center, the defendant admitted possession of the handgun over the phone. The defendant has prior convictions

for Felonious Assault, Domestic Violence, and Aggravated Assault.

This indictment was issued in the case before us, Clermont C.P. Case No. 2019 CR 00893.

{¶ 11} On October 7, 2019, the Hamilton County Court of Common Pleas issued a decision on Sanders' motion to amend its April 9, 2012 judgment entry. In that decision, the Hamilton County Court of Common Pleas noted that it had held a hearing and determined that Sanders had violated the terms of his community control. Based upon this finding, the Hamilton County Court of Common Pleas noted that it had then revoked Sanders' community control and sentenced Sanders to serve seven years in prison for felonious assault. The Hamilton County Court of Common Pleas also noted that it had sentenced Sanders to serve seven years in prison for endangering children. The Hamilton County Common Pleas Court then noted that it had ordered the two sentences to be served concurrently, awarded Sanders with seven years of jail-time credit, terminated Sanders' community control, and dismissed Sanders' community control violation.

{¶ 12} On February 11, 2020, Sanders filed a motion to suppress with the trial court. Similar to the motion that he had filed with the Hamilton County Court of Common Pleas, Sanders argued that the search of his residence was unlawful because the sentence imposed by the Hamilton County Court of Common Pleas in 2012 ordering him to serve his three-year community control term consecutive to his seven year prison sentence "was void from its inception" based on the Ohio Supreme Court's decision in *Hitchcock*. Therefore, according to Sanders, because the Hamilton County Court of Common Pleas' decision sentencing him to three-year community control term was "void," P.O. Urban's "supervision and authority to search" his residence was also void and anything discovered in the search of his residence was subject to the exclusionary rule and must be suppressed.

{¶ 13} On March 10, 2020, the trial court held a hearing on Sanders' motion to

suppress. Because the facts were generally not in dispute, the trial court did not hear any witness testimony at this hearing. The trial court instead heard legal arguments from both parties regarding what impact, if any, the Ohio Supreme Court's decision in *Hitchcock* had on P.O. Urban's ability to conduct a search of Sanders' residence given the fact that *Hitchcock* rendered Sanders' three-year community control term "void." The trial court also heard arguments as to whether the "good faith" exception to the exclusionary rule applied.

{¶ 14} To assist the trial court, the parties submitted three joint exhibits and eight joint stipulations of fact. Those eight stipulations of fact submitted to the trial court are as follows:

> 1. Agent Chris Wilson and Hamilton County Probation Officer Brian Urban are not licensed attorneys.
>
> 2. Agent Wilson and his fellow officers in the Clermont County Narcotics Unit and P.O. Urban and his fellow Probation Officers are not in the practice of monitoring the Ohio Supreme Court's website for case law updates.
>
> 3. At no time on August 15, 2019 or August 16, 2019 were Agent Wilson or P.O. Urban aware of the Ohio Supreme Court's decision in *State v. Hitchcock*.
>
> 4. No Hamilton County judicial official or court staff ever contacted P.O. Urban about the status of Defendant's community control pursuant to *State v. Hitchcock*.
>
> 5. On August 16, 2019, Agent Wilson was unaware of any of the details regarding Defendant's probation for case Number B 1107010, other than being told by P.O. Urban that Defendant was on probation to Hamilton County and they had a warrant for his arrest.
>
> 6. P.O. Urban and his fellow probation officers in Hamilton County do not question Judges about their decisions to place someone on probation, they merely supervise the individuals that are placed on probation through the court system.
>
> 7. P.O. Urban received the information regarding Defendant's possible address and firearm possession late in the day on August 14, 2019, and he contacted Agent Wilson for assistance the morning of August 15, 2019.

8. P.O. Urban conducted a search of Defendant's residence, which led to the discovery of the firearm, pursuant to his ability as a Probation Officer to search the residence of any individual that is supervised by the Hamilton County Probation Department.

{¶ 15} On March 25, 2020, the trial court issued a decision denying Sanders' motion to suppress. In so holding, the trial court determined that "[e]ven if the search at issue in this case was unwarranted, the good faith exception to the exclusionary rule clearly applies." Expounding on its holding, the trial court stated:

Under the circumstances of the case at hand, the Court finds that the possibly unwarranted search at issue was conducted with absolutely no culpability on the part of law enforcement. Thus, suppressing the resulting evidence would have zero deterrent effect on future Fourth Amendment violations. *Hitchcock* was decided on August 15, 2019. The search of the Defendant's residence took place the very next day. As the State notes, law enforcement officers cannot be expected to read and comprehend the ramifications of decisions by the Ohio Supreme Court within 24 hours of the announcement of those decisions.

{¶ 16} Continuing, the trial court stated:

Here, the actions of the [Hamilton County Probation Department] and the Clermont County Sheriff's Department were objectively reasonable and conducted in good faith. There was information that the Defendant had committed infractions of his probation, the [Hamilton County Probation Department] obtained an arrest warrant, and surveillance was conducted to confirm the information. Further, at the time the search was conducted, the [Hamilton County Probation Department] and the Clermont County Sheriff's Department had absolutely no reason to believe that the Defendant's community control sentence was legally void. In fact, that determination was not made by the Hamilton County Court of Common Pleas until October 7, 2019.

{¶ 17} On May 8, 2020, Sanders entered a plea of no contest to the indicted charge of having weapons while under disability. After conducting the necessary Crim.R. 11 plea colloquy, the trial court accepted Sanders' no contest plea upon finding Sanders had

entered his plea knowingly, intelligently, and voluntarily. Based upon the underlying facts offered by the state, the trial court then found Sanders guilty as charged. The trial court then held a sentencing hearing and sentenced Sanders to serve an 18-month prison term. The trial court also ordered the firearm discovered during the search of Sanders' residence be destroyed as contraband. Sanders now appeals, raising a single assignment of error challenging the trial court's decision to deny his motion to suppress.

**Motion to Suppress Standard of Review**

{¶ 18} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "'An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard.'" *State v. Frost*, 12th Dist. Fayette No. CA2018-11-023, 2019-Ohio-3540, ¶ 7, quoting *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

**The Good Faith Exception to the Exclusionary Rule Applies**

{¶ 19} As noted above, Sanders claims the trial court erred by denying his motion to suppress. To support this claim, Sanders' argues that because his three-year community control term was "void" from its inception given the Ohio Supreme Court's decision in

*Hitchcock*, P.O. Urban's authority to search his residence pursuant to the authority granted to him under the terms of Sanders' community control as Sanders' probation officer was also "null and void."[2]  However, even if we were agree to Sanders' claim that P.O. Urban's authority to search his residence became "null and void" upon the Ohio Supreme Court's release of its decision in *Hitchcock*, the trial court did not err by finding the good faith exception to the exclusionary rule clearly applies to the case at bar.

**Rule of Law: The Exclusionary Rule**

{¶ 20} "Generally, evidence obtained as a result of an unconstitutional search or seizure will be excluded under the exclusionary rule." *State v. Adkins*, 12th Dist. Butler Nos. CA2014-02-036 and CA2014-06-141, 2015-Ohio-1698, ¶ 48.  The exclusionary rule is "'a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation.'" *State v. Dibble*, 159 Ohio St.3d 322, 2020-Ohio-546, ¶ 14, quoting *Davis v. United States*, 564 U.S. 229, 231-232, 131 S.Ct. 2419 (2011).  "However, under the good-faith exception to the exclusionary rule, where police act objectively and in a 'reasonable-good faith belief' that their conduct is lawful, the evidence from these searches will not be excluded." *Id.*, citing *State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, ¶ 40-42; and *United States v. Leon*, 468 U.S. 897, 909, 104 S.Ct. 3405 (1984).

{¶ 21} "'To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *State v. Commins*, 12th Dist. Clinton Nos. CA2009-06-004 and CA2009-06-005, 2009-Ohio-6415, ¶ 25, quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695 (2009).  Therefore, "[s]ince the purpose

_____

2. Given Sanders' arguments, this decision offers no opinion as to whether Sanders' three-year community control term was *void* or merely *voidable* given the Ohio Supreme Court's decision in *Hitchcock*.  We nevertheless note that according to the Ohio Supreme Court's recent decision in *State v. Harper*, Slip Opinion No. 2020-Ohio-2913, a sentence is void only where the "sentencing court lacks jurisdiction over the subject-matter of the case or personal jurisdiction over the accused." *Id.* at ¶ 42.

of the exclusionary rule is to deter unlawful police conduct, evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *State v. Morse*, 12th Dist. Warren Nos. CA2001-11-099 and CA2001-11-100, 2002-Ohio-3873, ¶ 24, citing *Leon* at 919.

**Analysis**

{¶ 22} As stated previously, the trial court found the "possibly unwarranted search" of Sanders' residence by P.O. Urban was conducted "with absolutely no culpability on the part of law enforcement." We agree.

{¶ 23} The Ohio Supreme Court released its decision in *Hitchcock* on August 15, 2019. The search of Sanders' residence took place the very next day, August 16, 2019. The parties' joint stipulation of fact specifically notes that neither Agent Wilson nor P.O. Urban are licensed attorneys who were in the practice of monitoring the Ohio Supreme Court website for case law updates. The same is true as it relates to the other agents and probation officers in the Clermont County Narcotics Unit and the Hamilton County Probation Department. The parties' joint stipulation of fact also notes that neither Agent Wilson nor P.O. Urban were aware of the Ohio Supreme Court's decision in *Hitchcock* at any time prior to Sanders' residence being searched. The parties' joint stipulation of fact further notes that no Hamilton County judicial official or court staff ever contacted P.O. Urban about the status of Sanders' community control in light of the Ohio Supreme Court's decision in *Hitchcock*.

{¶ 24} Considering that even the most seasoned attorneys often lack the skillset necessary to understand the potential ramifications that a decision issued by the Ohio Supreme Court may have within 24 hours of its release, the same would certainly be true for law enforcement officers like Agent Sanders and P.O. Urban who are not licensed attorneys who engage in the practice of law. Therefore, just as the trial court found,

because there was no reason for anyone involved in the search of Sanders' residence to believe Sanders' three-year community control term had been rendered "void" at the time P.O. Urban conducted the search of Sanders' residence, "suppressing the resulting evidence would have zero deterrent effect on future Fourth Amendment violations." Accordingly, since the purpose of the exclusionary rule is to deter unlawful police conduct, something which did not occur here, we find no error in the trial court's decision denying Sanders' motion to suppress upon finding the good faith exception to the exclusionary rule clearly applies to the case at bar.

### *State v. Fleming* is Not Binding on this Court

{¶ 25} In so holding, we note that Sanders argues this court should reverse the trial court's decision based on the Second District Court of Appeals' decision in *State v. Fleming*, 2d Dist. Clark No. 2012 CA 59, 2013-Ohio-503. However, although *Fleming* presents a somewhat similar factual scenario to the facts at issue here, "[i]t is well-established that we are generally only bound by the decisions of the Ohio Supreme Court and by past precedent produced by our own district, not those decisions from [any of] the other eleven appellate districts." *State v. Ertel*, 12th Dist. Warren No. CA2015-12-109, 2016-Ohio-2682, ¶ 9. Therefore, rather than the Second District's decision in *Fleming*, we choose to instead follow the Ohio Supreme Court's decision in *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, wherein the Ohio Supreme Court found "[t]he exclusionary rule should not be applied when 'the official action was pursued in complete good faith' because it would have no deterrent effect." *Id.* at ¶ 97, citing *State v. George*, 45 Ohio St.3d 325, 331, quoting *Leon*, 468 U.S. at 919. We also choose to follow the Ohio Supreme Court's decision in *State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, wherein the Ohio Supreme Court found "the good-faith exception should be applied 'where new developments in the law have upended the settled rules on which the police relied.'" *Id.* at ¶ 48, quoting *United States v.*

*Sparks*, 711 F.3d 58, 68 (1st Cir.2013). Accordingly, finding no merit to any of the arguments advanced by Sanders' herein, Sanders' single assignment of error lacks merit and is overruled.

{¶ **26**} Judgment affirmed.

M. POWELL, P.J., and BYRNE, J., concur.